**[J-82-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| MICHAEL HANRAHAN, | : | No. 19 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court of Pennsylvania dated November |
| | : | 18, 2016 at Nos. 1638 EDA 2015 & |
| v. | : | 1702 EDA 2015 which |
| | : | Affirmed/Reversed/Remanded the Order |
| | : | of the Court of Common Pleas of |
| JEANNE BAKKER, | : | Delaware County, Civil Division, dated |
| | : | June 1, 2015, entered June 4, 2015 at |
| Appellee | : | No. 2008-16689. |
| | : | |
| | : | ARGUED: November 28, 2017 |


**OPINION**


**JUSTICE BAER**                                                         **DECIDED: June 19, 2018**

In this discretionary appeal, we consider whether the high income child support guidelines found at Pa.R.C.P. 1910.16-3.1 inherently account for the reasonable needs of the children such that any discrete analysis of those needs by a fact-finder is improper.[1] We also examine whether a voluntary contribution to an irrevocable non-grantor trust[2] for the benefit of the children is an appropriate factor for a court to

---

[1] Rule 1910.16-3.1(a), as applicable at the time relevant to this appeal, is set forth *infra* at pages 16-17. Briefly, the rule requires: (1) a preliminary calculation of child support according to the parties' respective monthly net incomes; (2) the making of adjustments for substantial or shared custody and allocations of certain additional expenses; and (3) the consideration of the deviation factors found at Pa.R.C.P. 1910.16-5. Pa.R.C.P. 1910.16-3.1(a)(1)-(3) (2013).

[2] The father in the case at bar emphasizes that he is neither a trustee for, nor beneficiary of, the trust.

consider for purposes of deviating from the guidelines amount of child support under Pa.R.C.P. 1910.16-5(b).[3]  Finally, we evaluate the propriety of an award of attorney's fees to the obligee in this case.

For the reasons set forth below, we conclude that Rule 1910.16-3.1 does not render independent examination of the reasonable needs of the children by the fact-finder improper in high income cases.  We further hold that a voluntary contribution to an irrevocable non-grantor trust for the benefit of the children is an inappropriate factor to consider for deviation purposes under Rule 1910.16-5(b).  Finally, we hold that the obligee is not entitled to an award of attorney's fees in this case.

## I.  Background

## A.  Facts

Michael Hanrahan (Father) and Jeanne Bakker (Mother), both attorneys, were married on November 14, 1992, and have two children (Children), born in 1998 and 2004.  Father and Mother divorced by decree dated July 9, 2009.  Prior to their divorce, Father and Mother entered into a property settlement agreement (PSA), which was incorporated into their divorce decree.  The PSA provides, in relevant part, as follows:

> The parties agree to exchange tax information for each tax year by no later than April 15 of the year following the tax year.  Child support and the proportion of Child Expenses shall be recalculated each year as of May 1 based on the parties' respective net incomes and Pennsylvania guidelines, provided, however, either party may apply to the Court to adjust child support and/or their share of Child Expenses for the year based on relevant factors.

PSA at 13.  The PSA further provides that in the event of a breach or wrongdoing by a party he or she "shall bear the burden and obligation of any and all costs and expenses

---

[3] Rule 1910.16-5(b) lists nine deviation factors, which are first set forth in full *infra* at page 17 n.15.

and counsel fees incurred by himself or herself as well as the other party to the extent the other party is successful in enforcing his or her rights under this [PSA]." *Id.* at 19.

From May 1, 2010 through April 30, 2011, Father's monthly support payment was set at $15,878, which was calculated based upon his 2009 income of $4,010,938, and Mother's 2009 income of $183,635. Amended Trial Court Order, 6/4/2015, at 3. From May 1, 2011 through April 30, 2012, Father's support payment was calculated to be $3,702 a month based upon his 2010 income of $1,083,312 and Mother's 2010 income of $138,988. *Id.* at 4. From May 1, 2012 through April 30, 2013, Father's support payment was $7,851 per month, which was calculated using his 2011 income of $2,303,031 and Mother's 2011 income of $145,593. *Id.* Notably, Mother prepared the support calculations each year apparently based on the first two parts of the calculation outlined in Pa.R.C.P. 1910.16-3.1(a),[4] and though Father disagreed with the methodology Mother used, he paid the amounts due per her calculations. *Id.* at 3-4, 8; Father's Trial Exhibits 6-10.

In 2012, Father's income jumped to approximately $15,500,000, while Mother's income was approximately $105,000. Amended Trial Court Order, 6/4/2015, at 4. That same year, Father deposited $2.5 million into an irrevocable non-grantor trust for the benefit of the Children. *Id.* at 9. Additionally, Father paid an approximate $70,000 in support year 2013 towards the Children's private school tuition and camps. *Id.* at 10. In March 2013, Father wrote a letter to Mother stating as follows:

> As we discussed, I was fortunate enough to make a substantial amount of money last year. Based on this income, the preliminary calculation that is the first step in the child support determination in high

---

[4] Again, as set forth *infra* at pages 16, the first two steps of Rule 1910.16-3.1(a) require a preliminary calculation of support according to the parties' respective monthly net incomes and then the making of adjustments for substantial or shared custody and allocations of certain additional expenses. Pa.R.C.P. 1910.16-3.1(a)(1)-(2).

income cases will yield a result that is way beyond any realistic estimate of the reasonable needs of the [C]hildren. In the past, you and your counsel have insisted on using the preliminary calculation[5] as if it were a definitive determination of the amount of child support. Though I considered the amounts excessive, I acquiesced to avoid conflict. However, I simply cannot agree that the reasonable needs of two children could be anywhere close to the preliminary calculation amount this year.

Letter from Father to Mother, 3/6/2013. While Father disagreed with the child support calculation, which would have averaged to about $60,000 per month,[6] he agreed to continue to pay the monthly child support amount of $7,851 that he paid the previous support year. Amended Trial Court Order, 6/4/2015, at 5.

### B. Trial Court Proceedings

On December 20, 2013, Mother filed a petition for enforcement of the PSA and divorce decree. Following extensive filings and a hearing at which Mother and Father testified, the trial court issued an order including its findings of fact and conclusions of law. Both parties filed motions for reconsideration, which the trial court granted. The trial court issued an amended order concluding that Father owed a monthly total of child support of $52,289 for the period of May 1, 2013, to August 8, 2013, and $59,206 for the period of August 9, 2013, to April 30, 2014.[7] *Id.* at 25-26.

---

[5] To be clear, while Father referenced Mother's use of Rule 1910.16-3.1(a)(1)'s preliminary calculation as the determinative amount of support, we reiterate that Mother appears to have also used Pa.R.C.P. 1910.16-3.1(a)(2), which provides for adjustments based upon custody and allocations of certain additional expenses, in calculating Father's support obligation.

[6] In Mother's petition for enforcement of the PSA and divorce decree, she alleged that Father's monthly child support obligation was $42,755 from May 1, 2013 through August 8, 2013, and $65,026 from August 9, 2013 through April 30, 2014. Mother's Petition for Enforcement of PSA and of Divorce Decree of July 9, 2009, 12/20/2013, at ¶16. The differing monthly amounts were based upon a change in the high income support guidelines made effective August 9, 2013. *See infra* at pages 4-5 n.7 and 16 n.13.

[7] The trial court deducted the $7,851 monthly support amount Father had already paid to Mother for a net monthly support obligation of $44,438 for the period of May 1, 2013 to August 8, 2013, and $51,355 for the period of August 9, 2013 to April 30, 2014. (continued…)

In calculating the support amount, the trial court rejected Father's claim that the court was required to conduct a discrete analysis of the reasonable needs of the Children in applying the high income guidelines and concluded that any such analysis had been eliminated from the child support guidelines. *Id.* at 18-19. The court also found that Father was entitled to a downward deviation for support purposes based upon his voluntary $2.5 million trust contribution on behalf of the Children. *Id.* at 24. Finally, the court found that neither party was entitled to an award of attorney's fees under the PSA, as neither party had been "successful" in the litigation, both had presented partially "flawed" arguments, and Father had continued to pay substantial monthly child support to Mother for the support year at issue. *Id.* at 25.

## C. Superior Court Decision

Both Mother and Father appealed to the Superior Court, each raising several issues. As is relevant herein, Father argued that the trial court erred in concluding that analysis of the reasonable needs of the Children had been eliminated from the calculation of a child support obligation under the guidelines. Mother claimed that the trial court erred in concluding that: (1) Father was entitled to a downward deviation for support purposes based on his voluntary trust contribution; and (2) Mother was not entitled to reimbursement of attorney's fees pursuant to the PSA.

In a published, split decision, a three-judge panel of the Superior Court affirmed in part and reversed in part the trial court's amended order, and remanded the matter to the trial court. *Hanrahan v. Bakker*, 151 A.3d 195 (Pa. Super. 2016). The Superior

---

(…continued)

Amended Trial Court Order, 6/4/2015, at 26. The court awarded two different monthly support amounts based upon an amendment to the high income guidelines that became effective on August 9, 2013, and changed the monetary values and percentages used to calculate the support amount. *Id.* at 16. *See also infra* at page 16 n.13.

Court majority opinion concluded that the trial court did not err in fashioning a child support award without conducting a discrete analysis of the reasonable needs of the Children. The Superior Court explained that, in 2010, this Court added Pa.R.C.P. 1910.16-3.1 to the guidelines to address high income cases. The Superior Court observed that, according to Rule 1910.16-3.1's 2010 Explanatory Comment, the rule was "intended to bring all child support cases under the guidelines and treat similarly situated parties similarly." *Hanrahan*, 151 A.3d at 206-07 (quoting Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010).

The court further highlighted the comment's statement that "high income child support cases no longer will be decided pursuant to *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984)." *Hanrahan*, 151 A.3d at 207 (quoting Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010). *Melzer*, discussed *infra* at page 12, provided the formula for calculating child support in high income cases prior to adoption of the 2010 amendments to the guidelines and included an analysis of the children's reasonable needs.

Accordingly, the Superior Court rejected Father's contentions that the "replacement of the complicated *Melzer* analysis with the three[-]step process of Rule 1910.16-3.1 did not eliminate the reasonable needs limitation on child support" and that a trial court must consider a child's reasonable needs when determining an appropriate support award pursuant to 23 Pa.C.S. § 4322.[8] *Hanrahan*, 151 A.3d at 207. The

---

[8] Section 4322 provides in full as follows:

> **(a) Statewide guideline.--**Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning

(continued…)

Superior Court explained that, in accord with Section 4322: (1) the guidelines are based in part upon the reasonable needs of the child; (2) in determining reasonable needs, the guidelines "place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations;" and (3) there is a rebuttable presumption that the award as determined through application of the guidelines is the correct amount to be awarded. *Id.* (quoting 23 Pa.C.S. § 4322). The Superior Court further noted that, in applying Pa.R.C.P. 1910.16-3.1, the trial court is to consider the factors listed in Pa.R.C.P. 1910.16-5(b) to determine whether deviation is proper, and that "reasonable needs" is not listed as a specific factor for consideration. *Hanrahan*, 151 A.3d at 207.

The Superior Court also opined that Pennsylvania courts had already rejected Father's argument. The Superior Court specifically relied upon this Court's decision in *Ball v. Minnick*, 648 A.2d 1192 (Pa. 1994), a "standard," non-high income, support case where the Court rejected that a guidelines deviation should be permitted when the basic needs of the children allegedly could be met through a payment of less than the guidelines amount. *Hanrahan*, 151 A.3d at 207-08 (discussing *Ball*, 648 A.2d at 1196).

---

(…continued)

capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

**(b) Rebuttable presumption.--**There shall be a rebuttable presumption, in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded. A written finding or specific finding on the record that the application of the guideline would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria established by the Supreme Court by general rule within one year of the effective date of this act.

23 Pa.C.S. § 4322.

The Superior Court further explained that in another standard support case, *Arbet v. Arbet*, 863 A.2d 34 (Pa. Super. 2004), it had rejected the father's argument that the court should have considered the children's reasonable needs rather than simply applying the guidelines formula. As the Superior Court noted, the *Arbet* court observed that the father's argument essentially advocated for a *Melzer* analysis in every case and that "[t]he rules make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support." *Hanrahan*, 151 A.3d at 208 (quoting *Arbet*, 863 A.2d at 42).

Notwithstanding that *Ball* and *Arbet* were standard rather than high income support cases, the Superior Court found that both cases were applicable herein. *Id.* The Superior Court thus held that the trial court did not err or abuse its discretion in awarding child support in this case based on the guidelines formula without engaging in a separate analysis of the Children's reasonable needs.[9] *Id.*

Regarding Mother's issues, the Superior Court first concluded that the trial court abused its discretion by determining that Father's voluntary trust contribution was a "relevant and appropriate" factor entitling Father to a downward deviation under Pa.R.C.P. 1910.16-5(b)(9) (providing that the trier of fact consider "other relevant and appropriate factors, including the best interests of the child or children" in deciding whether to deviate from the guidelines amount of support). In so doing, the Superior Court observed that "a parent's obligation to support minor children is independent of

---

[9] In the Superior Court, Father also contended that the trial court erred as a matter of law in interpreting and applying deviation factors (7) ("standard of living of the parties and their children") and (9) ("other relevant and appropriate factors, including the best interests of the child or children") from Pa.R.C.P. 1910.16-5(b), by failing to consider the children's reasonable needs. As the Superior Court found no error in the trial court's failure to engage in a separate reasonable needs analysis, it likewise rejected this claim. *Hanrahan*, 151 A.3d at 208.

the minor's assets" and that, "to the extent that a parent can 'reasonably' do so, a parent is obligated to provide support for a child regardless of the child's property." *Hanrahan*, 151 A.3d at 204 (quoting *Sutliff v. Sutliff*, 528 A.2d 1318 (Pa. 1987) (plurality)). Thus, the Superior Court concluded that the trial court should not have considered the Children's assets (*i.e.*, the $2.5 million in trust funds) when determining Father's child support obligations and deviations.

The Superior Court also relied upon *Portugal v. Portugal*, 798 A.2d 246 (Pa. Super. 2002), holding that a father's voluntary contributions to his 401(k) retirement plan constituted income for support purposes. The court at bar analogized Father's voluntary trust contribution to the voluntary 401(k) contributions in *Portugal*, and concluded that the trial court could not reduce Father's child support obligation because of his voluntary trust contribution. *Hanrahan*, 151 A.3d at 204. The Superior Court further reasoned that the trial court's primary focus should have been on the Children's immediate needs and that ordering a downward deviation of Father's present child support obligation based upon the trust contribution was in direct opposition to that principle. *Id.* (citing *MacKinley v. Messerschmidt*, 814 A.2d 680, 683 (Pa. Super. 2002) (noting "the dominant interest of the children's immediate needs, as well as the recognition that children should not be made to wait for support and parents should not be permitted to defer income to which they are entitled until they choose to avail themselves of it").

Turning to the issue of attorney's fees, the Superior Court determined that the trial court abused its discretion by denying the reimbursement of fees to Mother. The court explained that the PSA: (1) required Father to pay child support to Mother according to the guidelines; and (2) stated that the "breaching or wrongdoing party … shall bear the burden of counsel fees … to the extent the other party is successful in

enforcing his or her rights." *Id.* at 205 (quoting PSA at 19). The Superior Court concluded that Father was the breaching or wrongdoing party herein for sending the March 2013 letter (*supra* at pages 3-4), which the Superior Court loosely paraphrased as informing Mother that "he no longer agreed to pay child support according to the [g]uidelines" as required by the PSA. *Id.* According to the Superior Court, Mother sought enforcement of the PSA, and the trial court awarded Mother support in accordance therewith through use of the guidelines. Thus, Mother was entitled to attorney's fees for successfully enforcing her rights under the PSA. *Id.* The Superior Court further observed that, based upon the plain language of the PSA, the trial court's denial of attorney's fees on the basis that both parties had "flawed arguments" was improper. *Id.*

In a dissenting opinion, Judge Jenkins disagreed with the majority on the issues concerning Father's trust contribution and the award of attorney's fees to Mother. With respect to the trust contribution, Judge Jenkins opined that the majority's reliance upon *Portugal* was misplaced because the $2.5 million was included in Father's income calculation, he used the money to create an irrevocable trust for the benefit of the Children, and he was not a trustee for or beneficiary of the trust. *Id.* at 213 (Jenkins, J., dissenting). Judge Jenkins also criticized the Majority's reliance upon *Sutliff*, explaining that the trial court did not award the downward deviation in light of the Children's assets, but rather because Father chose to give a significant amount of his income to secure their futures, which was clearly in their best interests. *Id.* As for the award of attorney's fees to Mother, Judge Jenkins agreed with the trial court's reasoning in denying fees and concluded that Father did not breach the PSA for contesting the extreme increase in his child support calculation. *Id.* at 215.

II. Issues

We granted allowance of appeal to decide the following issues, as stated by Father, but modified to eliminate superfluous argument:

a. Whether the Superior Court erred on an issue of first impression and substantial public importance by affirming the trial court's misinterpretation of the Pennsylvania Supreme Court's high income support guideline[s], Pa.R.C.P. 1910[.]16[-]3.1…[.]

b. In holding that the trial court abused its discretion by granting a downward deviation of approximately 4% of the $2.5 million Father placed in an irrevocable non-grantor trust for the [C]hildren, did the Superior Court err by ruling, as a matter of first impression and substantial public importance, that a voluntary contribution to a trust can never be a relevant factor in determining child support?

c. Did the Superior Court depart from accepted judicial practice, thereby justifying the exercise of the Pennsylvania Supreme Court's supervisory authority, when the Superior Court made a premature and incorrect holding that the trial court abused its discretion in denying Mother an award of attorney[']s fees … ?

*Hanrahan v. Bakker*, 168 A.3d 1291 (Pa. 2017) (*per curiam*).

### III. Discussion

### A. Standard of Review

We review child support awards for an abuse of discretion. *Maher v. Maher*, 835 A.2d 1281, 1283 (Pa. 2003). A court does not commit an abuse of discretion merely by making an error of judgment. *Id.* Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. *Id.* This Court has further observed that we will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support actions. *Ball*, 648 A.2d at 1196. Additionally, as this appeal presents questions of law, we observe that "our standard of review is *de novo* and our scope of review is plenary" for such questions. *A.S. v. I.S.*, 130 A.3d 763, 768 (Pa. 2015).

### B. Reasonable Needs

i. History

To understand the import of the parties' arguments, we first review the history of the adoption of Rule 1910.16-3.1. In 1984, prior to the adoption of the guidelines, this Court identified a need for an orderly method of calculating child support awards and thus took the opportunity to set forth a methodology for the calculation of child support in *Melzer v. Witsberger*, 480 A.2d 991 (Pa. 1984). The calculus set forth by the *Melzer* Court included a determination of the reasonable needs of the children involved and the respective abilities of the parents to support the children. *Id.* at 995-96.

Shortly thereafter, federal and state legislation was passed requiring the adoption of child support guidelines, which today are reviewed at least every four years and create a rebuttable presumption regarding the amount of child support a parent is obligated to pay. *See* 42 U.S.C. § 667(a), (b)(2);[10] 23 Pa.C.S. § 4322(a)-(b).[11] As

---

[10] Section 667 provides:

**(a) Establishment of guidelines; method**

Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.

**(b) Availability of guidelines; rebuttable presumption**

***

**(2)** There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case.

(continued…)

articulated in Section 4322, guidelines amounts are "based upon the reasonable needs of the child … seeking support and the ability of the obligor to provide support," which are determined by placing "primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." 23 Pa.C.S. § 4322(a). The Pennsylvania Rules of Civil Procedure 1910.16-1 *et seq.*, which became effective in 1989, represent this Court's manifestation of these principles.

In 1994, following the guidelines' adoption, this Court addressed the scope of their applicability in *Ball*, a support case falling within the standard guidelines.[12] Importantly, as *Ball* observed, the guidelines at the time provided that the *Melzer* formula still applied to high income cases. *See Ball*, 648 A.2d at 1195. The trial court in *Ball*, notwithstanding that it had before it a standard income case subject to the guidelines, had opined that the guidelines were only a starting point and ordered child support in an amount lower than the guidelines suggested. *Id.* at 1194-95. While the Superior Court reversed and remanded the matter on appeal because the trial court failed to consider certain relevant factors, the Superior Court likewise concluded that the

---

(…continued)

42 U.S.C. § 667(a), (b)(2).

[11] Section 4322 is set forth in full *supra* at pages 6-7 n.8.

[12] The "Basic Child Support Schedule" found at Pa.R.C.P. 1910.16-3 now sets forth the standard support guidelines figures. As the rule explains, the parties' "[c]ombined monthly net income is on the vertical axis of the schedule and number of children is on the horizontal axis of the schedule." *Id.* The figure where the two intersect is the basic child support obligation and, unless the rules provide otherwise, "the obligor's share of the basic support obligation shall be computed using the formula set forth in Part I of Pa.R.C.P. 1910.16-4." Pa.R.C.P. 1910.16-3.

guidelines were not mandatory, but only a starting point, and did not supersede the *Melzer* analysis. *Id.* at 1195.

This Court disagreed, concluding that in a standard support case the *Melzer* formula should not be employed, even if the finder-of-fact would have determined upon application of the guidelines that deviation is warranted. *Id.* The Court explained that there is a strong presumption that the amount of support determined in accordance with the guidelines is the appropriate support amount. *Id.* at 1196. The Court continued that, while a court may deviate from that amount, the court's discretion is not unfettered. *Id.* Indeed, deviation is permitted "only where special needs and/or circumstances are present such as to render an award in the amount of the guideline[s] figure unjust or inappropriate." *Id.* The Court further observed that: (1) the deviation factors listed in the guidelines were the only ones a trier of fact may consider in determining whether to deviate; (2) all relevant factors should be considered; and (3) no one factor will necessarily dictate whether deviation is appropriate. *Id.* The Court also explained that the trier-of-fact must make a reasoned decision as to whether deviation is necessary, and, if so, it must explain the justification for the deviation. *Id.*

The Court concluded that the trial court's primary justification for deviating from the guidelines in *Ball*, which was that the basic needs of the children could be met by a lesser support payment, was an improper consideration for deviation purposes. The Court reasoned that a "support obligation is not limited to the basic necessities of life," but rather includes "any expenditure that will reasonably further the child's welfare." *Id.* at 1196-97. The Court continued by explaining that "unless a child enjoys an unusually high standard of living, the amount of the support obligation is based on a parent's ability to pay child support rather than the amount of money required to pay for those

essential and nonessential items that would reasonably further the child's welfare." *Id.* at 1197.

The *Ball* Court also observed that the reasonable needs of the child and the reasonable expenses of the obligor were factored into the guidelines such that the guidelines amount of support "is presumed to be (1) a payment which the obligor can reasonably afford and (2) a payment that is reasonably necessary to further the child's welfare." *Id.* The Court reasoned that the guidelines were clearly intended to eliminate "individual, case-by-case determinations of just what constitutes the reasonable needs and expenses of the particular parties involved" and that, therefore, the trier-of-fact should not "consider in the first instance, the actual expenses of the parties in an effort to establish the reasonable needs of a particular child. Instead, the trier of fact must assume initially that the guideline[s] amount constitutes the amount necessary to meet the reasonable needs of the child." *Id.*

Based on the foregoing, the *Ball* Court concluded that deviation on the ground that an individual judge could conclude that a particular child does not require the guidelines amount of support is improper because that reason is not a listed factor. *Id.* The Court further found that, while the deviation factor referencing the parties' "standard of living" appeared to support the trial court's reasoning in the case, that factor was not intended to justify a downward deviation absent a showing of special needs and/or circumstances given the premises on which the guidelines are based, which are to ensure children receive an economically sound amount of support that is similar to other families in similar situations. *Id.* The Court reiterated that "the purpose of the support guidelines is to make available for the children's reasonable needs the full amount of the guideline[s] figure unless unusual obligations of the obligor limit his or her ability to

pay the guideline[s] amount." *Id.* Thus, the Court concluded that the trial court abused

its discretion in issuing the child support award.

Years after *Ball* was decided, in 2010, this Court adopted the high income child

support guidelines found at Rule 1910.16-3.1 to supplant *Melzer.* As of the time period

in question in this appeal, the rule provided, in relevant part, as follows:

> (a) *Child Support Formula.* When the parties' combined monthly net income [(CMNI)] is above $30,000, the following three-step process shall be applied to calculate the parties' respective child support obligations. The amount of support calculated pursuant to this three-step process shall in no event be less than the amount of support that would have been awarded if the parties' combined net monthly income were $30,000. That amount shall be a presumptive minimum.
>
> > (1) First, the following formula shall be applied as a preliminary analysis in calculating the amount of basic child support to be apportioned between the parties according to their respective incomes:
> >
> > ***
> >
> > Two children: $3,777 + 8.0% of combined net income above $30,000 per month.[13]
> >
> > ***
> >
> > (2) And second, the trier of fact shall apply Part II and Part III of the formula at Rule 1910.16-4(a), making any applicable adjustments for substantial or shared custody pursuant to Rule 1910.16-4(c) and allocations of additional expenses pursuant to Rule 1910.16-6;[14]

---

[13] As indicated *supra* at pages 4-5 nn.6-7, the high income guidelines were amended effective August 9, 2013, to change the values and percentages used in the preliminary calculation from $3,777 + 8.0% to $3,836 + 11.6%. 43 Pennsylvania Bulletin 2272 (April 27, 2013). Given that the parties disputed the amount of support Father owed from May 1, 2013 to April 30, 2014, the trial court ordered different support amounts based upon the amendments.

[14] In this matter, the parties stipulated that they had a shared 50/50 custody arrangement. *See* Amended Trial Court Order, 6/4/2015, at 3. We further observe that there is no dispute before this Court with respect to application of this second step of the three-step high income analysis.

(3) Then, third, the trier of fact shall consider the factors in Rule 1910.16-5 in making a final child support award and shall make findings of fact on the record or in writing.[15] After considering all of the factors in Rule 1910.16-5, the trier of fact may adjust the amount calculated pursuant to subdivisions (1) and (2) above upward or downward, subject to the presumptive minimum.

Pa.R.C.P. 1910.16-3.1 (2013).

Based on the foregoing, the three-step high income formula works as follows. First, a court conducts a "preliminary analysis" by calculating the basic child support amount to be apportioned between the parties according to their incomes. Pa.R.C.P. 1910.16-3.1(a)(1). That preliminary analysis requires the court to take the applicable basic support obligation from the support schedule found at Rule 1910.16-3 (based on a combined net income of $30,000 per month and the number of children involved) and to add to that value a specific percentage of CMNI above $30,000.[16] *Id.* Thus, for a high income case involving two children, the rule at the time called for the court to use $3,777 (or $3,836 after the 2013 amendment) as the standard support schedule value,

---

[15] The deviation factors are set forth in Rule 1910.16-5(b) and include the following:

(1) unusual needs and unusual fixed obligations;
(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) the relative assets and liabilities of the parties;
(6) medical expenses not covered by insurance;
(7) standard of living of the parties and their children;
(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

[16] As explained in more detail *infra*, the basic child support "schedule represents the amounts spent on children of intact families by [CMNI] and number of children" for combined net incomes up to $30,000 per month. Pa.R.C.P. 1910.16-3.

which represented how much an intact family having a CMNI of $30,000 would spend on 2 children. The court then was required to add 8.0% of the remaining CMNI (or 11.6% after the 2013 amendment) to that value to arrive at the basic child support amount.

Second, after the court determines the basic child support amount under subsection (a)(1), it is to make applicable adjustments for substantial or shared custody and allocations of additional expenses under Pa.R.C.P. 1910.16-3.1(a)(2). Finally, the court should consider the factors in Rule 1910.16-5 and determine whether deviation from the presumptive minimum is warranted in arriving at its final child support award. Pa.R.C.P. 1910.16-3.1(a)(3). In so doing, the court should make findings of fact on the record or in writing. *Id.*

Notably, with respect to application of this third step, the trier of fact is to consider income and expense statements that are required to be submitted by the parties in high income cases.[17] *See* Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010 ("Pursuant to Rule 1910.11(c)(2), in all high income cases, the parties must submit an Income Statement and the Expense Statement at Rule 1910.27(c)(2)(B) to enable the trier of fact to consider the factors in Rule 1910.16-5."); *see also* Pa.R.C.P. 1910.11(c)(2) (requiring submission of income and expense statements in high income cases); Pa.R.C.P. 1910.27(c)(1)-(2) (explaining that income statements "must be filled out in all cases" and that expense statements are required in high income cases); Pa.R.C.P. 1910.27 Ex. Cmt. 2010 (requiring submission of income and expense statements in high income cases).

---

[17] In addition, with respect to the expense statements in particular, failure of the parties to exchange such statements as required in high income cases "may result in an appropriate order for sanctions and/or the entry of an interim order based upon the information provided." Pa.R.C.P. 1910.27(c)(2)(B).

As explained in the 2010 Explanatory Comment accompanying Rule 1910.16-3.1,[18] the rule was "intended to bring all child support cases under the guidelines and treat similarly situated parties similarly." Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010. The rule thus eliminated the *Melzer* analysis for high income cases. *Id.* (explaining that "high income child support cases no longer will be decided pursuant to *Melzer*"). As discussed in detail below, the parties dispute whether the adoption of Rule 1910.16-3.1 and elimination of the *Melzer* analysis for high income cases has necessarily also eliminated any and all consideration of the reasonable needs of the children in these cases.

### ii. Arguments

Father argues that, in applying the high income guidelines, the lower courts erroneously treated the amount resulting from the preliminary calculation under Rule

---

[18] The full 2010 Explanatory Comment to Rule 1910.16-3.1 provides:

> New Rule 1910.16-3.1 is intended to bring all child support cases under the guidelines and treat similarly situated parties similarly. Thus, high income child support cases no longer will be decided pursuant to *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). Economic data support the amounts in the basic child support schedule up to combined net incomes of $30,000 per month. Above that amount, economic data are not readily available. Thus, for cases in which the parties' [CNMI] is above $30,000, the formula first applies a fixed percentage to calculate the amount of support. The formula is an extrapolation of the available economic data to higher income cases. Spousal support and alimony pendente lite awards in high income cases are preliminarily calculated pursuant to the formula in Part IV of Rule 1910.16-4(a). However, in both high income child support and spousal support/alimony pendente lite cases, the trier of fact is required to consider the factors in Rule 1910.16-5 before entering a final order and to make findings of fact on the record or in writing. Pursuant to Rule 1910.11(c)(2), in all high income cases, the parties must submit an Income Statement and the Expense Statement at Rule 1910.27(c)(2)(B) to enable the trier of fact to consider the factors in Rule 1910.16-5.

Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010.

1910.16-3.1(a)(1), as modified by Rule 1910.16-3.1(a)(2), as a conclusive and irrebuttable determination of the reasonable needs of the Children. Father further contends that, in performing the third step of the formula in this case, the lower courts erred in failing to consider the reasonable needs of the Children, particularly under deviation factors 7 ("standard of living of the parties and their children") and 9 ("other relevant and appropriate factors, including the best interests of the child or children"), as well as the expense statements that are required to be submitted in high income cases. Father additionally challenges the lower courts' conclusions that: (1) the high income guidelines inherently account for reasonable needs and (2) Section 4322's reasonable needs standard and any consideration thereof were eliminated through the adoption of Rule 1910.16-3.1 and the *Ball* and *Arbet* decisions.

Father contends that all three steps of Rule 1910.16-3.1, not just the first step, are required to calculate child support in high income cases. Father argues that the first step outlined in subsection (a)(1) is only a preliminary analysis. Indeed, Father suggests that the weight the trial court gives the preliminary analysis should decrease as CMNI above $30,000 increases, because the more that CMNI rises, the more the calculation becomes untethered to economic data, as explained below.

In support of his position, Father argues that the first part of Rule 1910.16-3.1(a)(1)'s equation requiring use of the standard support schedule is supported by economic data establishing reasonable needs, but that the second part of the equation requiring application of a fixed percentage to income over $30,000 CMNI is not. Echoing the comment to the rule, *supra* at page 19 n.18, Father contends that the fixed percentage in subsection (a)(1) is instead based upon straight-line extrapolation of existing economic data supporting the standard child support schedule, which assumes without empirical support that higher income families will continue to expend the same

percentage of income on reasonable needs as income increases. Thus, Father claims that, while reasonable needs is established by the Rule 1910.16-3 standard support schedule values for combined net income up to $30,000 per month in the first part of the subsection (a)(1) formula, a court should determine whether the result of applying the fixed percentage to the income above $30,000 CMNI in the second part of subsection (a)(1)'s formula is a reasonable approximation of the "additional" reasonable needs of the children in high income cases.

According to Father, that determination is made through application of the third step outlined in Rule 1910.16-3.1(a)(3), which directs that a court consider the deviation factors in conjunction with the required income and expense statements and issue written findings to reach the correct support amount. Father contends that the deviation factors are to be assessed against the reasonable-needs-of-the child standard as well as the ability-to-pay standard set forth in Section 4322, and, therefore, it is of no moment that reasonable needs is not listed as its own factor. Father also claims that reasonable needs should be considered particularly with respect to applying deviation factors 7 ("standard of living of the parties and their children") and 9 ("other relevant and appropriate factors, including the best interests of the child or children") of Rule 1910.16-5(b). Focusing on the treatment of expense statements in high income cases, Father contends that parties must submit detailed expense statements, which provide the otherwise missing economic data corroborating what a particular family spends on their children, and that courts are required to consider them in every high income case, which are distinct from standard income cases, where economic data establishes reasonable needs.

Mother counters that, through the adoption of Pa.R.C.P. 1910.16-3.1, high income child support cases were brought under the guidelines and any *Melzer*-based

reasonable needs analysis was expressly eliminated for such cases. Mother argues that, given that the net incomes and earning capacities of the parties receive primary emphasis in determining reasonable needs pursuant to Section 4322, the guidelines inherently account for the children's reasonable needs through use of the parties' net incomes and earning capacities. Additionally, Mother claims that the Superior Court did not err in relying upon *Ball* and *Arbet* because they both stand for the general proposition that the guidelines factor in reasonable needs for all support cases and that a trial court need not consider them separately.[19]

With respect to the application of Rule 1910.16-3.1, Mother argues that, under subsection (a)(1), a court uses an extrapolated number, which is determined by taking the existing support obligation for CMNI of exactly $30,000 and adding to it a fixed percentage of any CMNI exceeding $30,000. Mother next observes that, pursuant to Rule 1910.16-3.1(a)(3), a court then considers the nine deviation factors enumerated in Rule 1910.16-5(b), and is permitted to deviate upward or downward to reach an appropriate support award. Mother thus contends that Rule 1910.16-3.1 does not require straight-line extrapolation in a calculation of a support award from a CMNI of $30,000 to higher incomes as Father suggests, because the rule requires the trier of fact to consider the nine deviation factors in determining whether to adjust the final support amount.

Mother further emphasizes that reasonable needs is not included among the deviation factors and that, if they were intended to be considered, the Domestic Relations Procedural Rules Committee would have included them as a factor. Mother

---

[19] Mother further argues that, albeit in the context of a high income *alimony pendent lite* (APL)/spousal support case, this Court has already rejected Father's needs-based argument in *Mascaro v. Mascaro*, 803 A.2d 1186 (Pa. 2002).

also notes that the deviation factors apply equally to both standard and high income cases, and that they serve the same purpose in all support cases: to provide for deviation where the guidelines amount "would be unjust or inappropriate in a particular case." Mother's Brief at 25 (quoting 23 Pa.C.S. § 4322(b)). Mother contends that the presence of economic data for standard support cases and the absence of economic data for high income cases does not somehow import a latent requirement for a reasonable needs analysis into the deviation factors for high income cases. As for consideration of expense statements in applying subsection (a)(3), Mother claims that the sole purpose for these statements is to "enable the trier of fact to consider the [deviation] factors in Rule 1910.16-5," which again do not include reasonable needs. *Id.* at 24 (quoting Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010). Mother contends that Father's argument that Pa.R.C.P. 1910.16-3.1 requires some hybrid approach including an analysis of the Children's reasonable needs as expressed on the expense statement is not supported by the rule or its explanatory comment.

### iii. Analysis

As previously discussed, the high income guidelines apply when the parties' combined net income exceeds $30,000 per month. Pa.R.C.P. 1910.16-3.1(a). A comment to this rule instructs that high income cases are no longer to be decided pursuant to *Melzer*, and all child support cases are now decided under the guidelines. Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010. However, while it is clear that high income child support cases are now analyzed under Rule 1910.16-3.1, instead of the *Melzer* formula, this does not equate to a prohibition against all consideration of a child's reasonable needs in performing the high income guidelines calculation. Rather, as discussed further below, discrete consideration of children's reasonable needs is necessary in high

income cases given the lack of economic data establishing children's needs in these cases.

Pennsylvania's guidelines, like those of many other states, are based upon the Income Shares Model, which is premised on "the concept that the child of separated, divorced or never-married parents should receive the same proportion of parental income that she or he would have received if the parents lived together." Pa.R.C.P. 1910.16-1 Ex. Cmt. 2010 (A). In this regard, several authoritative economic studies have determined that the proportion of household spending on children is directly related to the level of household income, in addition to the number of children. *Id.*

These studies also provide estimates of the average amount of household expenditures for children in intact households, which are reflected in the standard support schedule for incomes covered by that schedule. *See id.* ("[T]he basic support amounts reflected in the schedule in Rule 1910.16-3 represent average marginal expenditures on children for food, housing, transportation, clothing and other miscellaneous items that are needed by children and provided by their parents, including the first $250 of unreimbursed medical expenses incurred annually per child."); *see also* Pa.R.C.P. 1910.16-1 Ex. Cmt. 2010 (C) (explaining that the standard support schedule had been "amended to reflect updated economic data … to ensure that children continue to receive adequate levels of support," that the schedule amounts had been "expanded to apply to a [CMNI] of $30,000 and remain statistically valid," and that "[t]he economic data support the revised schedule"); Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010 ("Economic data support the amounts in the basic child support schedule up to combined net incomes of $30,000 per month."). Thus, these economic studies ensure not only that similar people are treated similarly, but also that the standard support

award is actually, not theoretically, tied to the reasonable needs of children living in standard income households.

This economic data, however, is not available for high income cases. Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010 ("Above [CMNI of $30,000], economic data are not readily available."). Because economic data is not readily available for high income cases, the first step of the high income guidelines set forth in subsection (a)(1) requires a "preliminary analysis" using a formula that takes the amount of support set in the standard support schedule for $30,000 CMNI and adds to it a fixed percentage of the CMNI above $30,000. *See* Pa.R.C.P. 1910.16-3.1(a)(1). This formula is a rough extrapolation of the economic data available for standard income cases to higher income cases. Pa.R.C.P. 1910.16-3.1 Ex Cmt. 2010. Thus, while use of the extrapolated data results in similar people being treated similarly, which is one of the goals of the guidelines (*see* 23 Pa.C.S. § 4322(a)), it also results in a high income support award that is only theoretically, not actually, tied to the reasonable needs of children living in high income households in that it is not tethered to evidence-based economic data.

To remedy these shortcomings, we conclude that a court should engage in additional scrutiny of the reasonable needs of the particular children involved in the high income case before it. This conclusion is supported by the high income guidelines, which indicate that this scrutiny occurs in the third step of the formula mandating consideration of the deviation factors listed in Pa.R.C.P. 1910.16-5(b) in conjunction with the required income and expense statements submitted in such cases. *See* Pa.R.C.P. 1910.6-3.1(a)(3) ("[T]he trier of fact shall consider the factors in Rule 1910.16-5 in making a final child support award and shall make findings of fact on the record or in writing."); Pa.R.C.P. 1910.16-3.1 Ex. Cmt. 2010 (explaining that in high

income child support cases, the parties must submit income and expense statements to enable the trier of fact to consider the factors in Rule 1910.16-5, and the trier of fact must consider the factors in Rule 1910.16-5 before entering a final order supported by findings of fact).

With respect to the deviation factors, we acknowledge that reasonable needs are not specifically listed. Nevertheless, we agree with Father that it is one of the overarching criteria, along with the ability of the obligor to pay, which is served through application of the articulated factors. Indeed, while neither standard is explicitly listed in Rule 1910.16-5(b), it is clear that nearly all of the factors speak to either one or both standards.[20] For instance, the factor relating to "other support obligations of the parties" speaks to the obligor's ability to pay, just as the factor relating to "ages of the children" speaks to their reasonable needs. Pa.R.C.P. 1910.16-5(b)(2), (4). Further, the "standard of living" factor and the catchall factor, "other relevant and appropriate factors, including the best interests of the child or children," implicates both standards.[21] Pa.R.C.P. 1910.16-5(b)(7), (9).

---

[20] One of the deviation factors relates only to spousal support or APL cases and requires the trier of fact to consider "the duration of the marriage from the date of marriage to the date of final separation." Pa.R.C.P. 1910.16-5(b)(8).

[21] When considering the "standard of living" deviation factor, the trier of fact should be mindful of the concern for guarding against one party buying the affection of the children, which this Court has highlighted in the past. In *Colonna v. Colonna*, 855 A.2d 648 (Pa. 2004), this Court held that, "where the incomes of the parents differ significantly, … it is an abuse of discretion for the trial court to fail to consider whether deviating from the support guidelines is appropriate, even in cases where the result would be to order child support for a parent who is not the primary custodial parent." *Id.* at 652. In so doing, the Court noted the concern that a non-custodial parent making less money than the custodial parent likely would be unable "to provide an environment that resembles the one in which the children are accustomed to living with the custodial parent," and observed that "[t]he temptation for the well-off parent to buy the affection of the children, and tendency of the children to favor the parent who provides them with a more attractive lifestyle are factors that do not serve the best interests of the children." *Id.* at 651 & n.5. The Court further observed that, while "the trial court should inquire (continued…)

Turning to the expense statements, we observe that the role these statements play in high income cases differs greatly from the role they play in standard support cases. Specifically, where expense statements are required in all high income cases, standard support cases only require an expense statement if "a party avers unusual needs and expenses that may warrant a deviation from the guideline[s] amount of support pursuant to Pa.R.C.P. No. 1910.16-5 or seeks an apportionment of expenses pursuant to Pa.R.C.P. No. 1910.16-6." Pa.R.C.P. 1910.27(c)(2); *see also* Pa.R.C.P. 1910.11(c)(1) (explaining that expense statements are unnecessary in standard support cases unless "a party is claiming unusual needs and unusual fixed expenses that may warrant a deviation … or seeks apportionment of expenses"). Notably, the expense statement used in high income cases is much more detailed than the expense statement used in standard income cases. The high income expense statement includes columns for the children's monthly expenses and a parent's monthly expenses, as well as lines for items ranging from clothing and groceries to children's parties and pet expenses, none of which are included in the expense statement for standard income cases. *Compare* Pa.R.C.P. 1910.27(c)(2)(A) (setting forth the expense statement for standard-income cases), *with* Pa.R.C.P. 1910.27(c)(2)(B) (setting forth the expense statement for high income cases).

These differences lend significant credence to Father's argument that, because the first step of the high income support calculation is based upon extrapolated

_____

(…continued)
whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody, … the term 'appropriate' does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean 'merely adequate.'" *Id.* at 652. Rather, the determination of what is "appropriate" is left to the trial court's discretion upon consideration of all of the relevant circumstances. *Id.*

economic data from standard support cases, the calculation should be supplemented by the actual economic data of the parties, as established by the expense statements, which should be considered in light of the deviation factors before a fact-finder arrives at a final support award. Thus, we conclude that, in high income cases, the trier of fact should consider the deviation factors as necessarily implicating the reasonable needs of the children, and a court should use the required expense statements in considering those factors to arrive at a support amount that adequately accounts for the children's reasonable needs.

As should be evident at this point, *Ball* is distinguishable on the basis that it involved a standard support award supported by sound economic data.[22] [23] *Ball* addressed an argument that the children's basic needs could be met by a lesser amount, which the Court rejected on the basis that the focus is on the child's reasonable needs, which are accounted for in the standard income guidelines. While *Ball* held that it is improper to deviate from the guidelines on the basis that a particular child does not need the amount of money determined by the guidelines given the premises upon which the guidelines are based, as explained above, those premises are not fully realized in high income cases due to the lack of economic data supporting Rule 1910.16.3-1(a)'s formula. Though the formula treats similar families similarly, there is no valid economic data establishing that the formula produces an award that equates to "the same

---

[22] In addition to noting that *Arbet* is not binding on this Court, we distinguish it on the same basis.

[23] We further recognize that our conclusion results in different treatment of the deviation factors in standard income cases versus high income cases, despite the fact that the same factors apply to both types of cases. However, given the lack of valid economic data establishing reasonable needs and the import of the detailed expense statements required to be submitted in high income cases, we conclude that this different treatment is contemplated in the rules and is proper.

proportion of parental income that [the children] would have received if the parents lived together." Pa.R.C.P. 1910.16-1 Ex. Cmt. 2010 (A). In other words, there is no valid economic data actually establishing that any child reasonably needs the amount of support awarded under the formula. Thus, we conclude that *Ball* and its progeny *Arbet* are inapplicable herein.[24]

As a final point, we realize our conclusion may result in some inconsistent treatment among similarly situated high income families. However, we emphasize that application of the high income income guidelines is limited to cases in which the parties have a combined net income exceeding $30,000 per month. We further stress that, through use of the deviation factors and income and expense statements, the trier of fact should determine whether there should be deviation from the presumptive minimum amount of support. *See* Pa.R.C.P. 1910.16-3.1(a)(3) & Ex. Cmt. 2010. Indeed, given that Rule 1910.16-3.1(a)(1)'s formula first uses standard support schedule values that are backed by statistically valid economic data up to $30,000 CMNI, we agree with Father that a trial court should give more weight to the amount resulting from subsection (a)(1)'s entire formula the closer that amount is to those values when conducting its

---

[24] We also find Mother's reliance on *Mascaro* to be inapposite. In *Mascaro*, the Court held that high income APL/spousal support cases were to be analyzed under the guidelines as opposed to the *Melzer* formula. In so doing, it concluded that while the guidelines at the time provided that the standard support guidelines did not apply to high income child support cases and that such cases were to be analyzed under the *Melzer* formula, there was no equivalent limitation provided in the guidelines for high income APL/spousal support cases. *Mascaro*, 803 A.2d at 1192-93. The Court also explained that, while the Superior Court justified use of the *Melzer* formula in high income APL/spousal support cases in part on the fact that there was no data in the Income Shares Model supporting application of the guidelines in such cases, this Court explained that the Income Shares Model relates only to child support and bears no relation to the APL/spousal support guidelines. *Id.* Thus, as *Mascaro* predated adoption of the high income support guidelines and addressed high income APL/spousal support cases, we do not read *Mascaro* to have already rejected Father's claim as Mother does.

deviation analysis. Keeping these protections in mind while employing a discrete reasonable needs analysis will minimize the disparity among treatment of high income cases, while also preventing support awards in such cases from inappropriately increasing in tandem with an obligor's income into perpetuity and resulting in a mere transfer of wealth between parents.

In light of the foregoing, we hold that, because Rule 1910.16-3.1 is based upon an extrapolation of economic data establishing reasonable needs for children in standard income cases rather than actual economic data establishing reasonable needs for children in high income cases, a court should consider the particular children's reasonable needs in applying that rule to fashion support awards in high income cases. Specifically, a court is to conduct a separate reasonable needs analysis in the third step of the high income guidelines by assessing the deviation factors found in Rule 1910.16-5(b), in conjunction with the income and expense statements required in such cases. In so doing, the court must make findings of fact on the record or in writing in making a final child support award. Accordingly, we conclude that the Superior Court erred in holding that the trial court properly fashioned a support award based on the high income guidelines without engaging in a separate and discrete analysis of the reasonable needs of the Children in this case.

### C. Trust Contribution

#### i. Arguments

Father challenges the Superior Court's conclusion that his voluntary trust contribution is not a proper deviation factor under Rule 1910.16-5. Father first notes that the trial court did not grant a downward deviation in the full amount of the trust contribution. Rather, Father argues that the trial court included the entire $2.5 million in Father's income, then properly considered the contribution as a "relevant and

appropriate" factor under Rule 1910.16-5(b)(9) to reduce his support obligation by approximately $100,000 for the year. Father argues that the trial court has the discretion to adjust the award as long as it provides adequate reasons for doing so. According to Father, the trial court deviated downward herein because it believed that it was in the best interests of the Children to encourage Father to provide for them, and to prevent Mother from receiving large lump sums that are unnecessary for the Children's immediate support.

Father also echoes Judge Jenkins' criticism of the Superior Court majority's conclusion that the trust contribution cannot be considered as a deviation factor, further emphasizing that the cases the majority relied on, *Sutliff*, *Portugal*, and *MacKinley*, are distinguishable from this matter, as discussed *infra*. Father also contends that the Superior Court erred in assuming that the trust was only for future use and could not be available for current needs.[25] Finally, Father argues that, as a matter of public policy, Pennsylvania should encourage parents to provide for their children without being forced to do so, and that the Superior Court's decision sends a message to parents to refrain from taking such voluntary actions, which is not in the children's best interests.

Mother counters that the Superior Court correctly concluded that the trial court erred in deviating downward as a result of Father's trust contribution and argues that its reasoning in support of its decision is sound. Mother contends that the trial court failed to explain how the downward deviation was necessary to avoid a support award that was unjust or inappropriate and violated the principles set forth in *Portugal*, *MacKinley*, and *Sutliff*. In particular, Mother argues that the trial court's downward deviation is the functional equivalent of reducing Father's income available for support. Mother claims

---

[25] Father does not explain the details of the trust instrument, and we therefore have no insight as to how the trust could be available for the Children's current needs.

that crediting any voluntary contribution against a support amount, whether through an income deduction or downward deviation, has the adverse net-effect of diminishing the Children's monthly support amount. Mother argues that, as a matter of public policy, voluntary transfers of income cannot work to reduce a parent's current statutory child support obligation given the dominant interest of the children's immediate needs. Mother also contends that a parent's obligation to support his children is independent of the minors' assets and that, just as a court should preserve the children's assets where an obligor has sufficient means of his own to satisfy child support expenses, a court should likewise preserve the children's support payments where the obligor has the means to satisfy the support obligation and deposit funds into a trust for the children.

Mother also contends that if we accept Father's position in principle, consistent therewith an obligor could place all of his income into a trust for the future benefit of his children and escape his current child support obligation altogether. Mother claims that a thoughtful analysis would recognize that Father altruistically made the voluntary contribution in addition to, rather than in lieu of, child support payments. Mother additionally argues that the Superior Court's decision does not discourage parents from making voluntary financial contributions to support their children and that, while parents are free to contribute whatever funds they desire into a trust for the benefit of their children, they cannot do so at the expense of the children's current support.

## ii. Analysis

Section 4322 allows for deviations from the guidelines amount of support "for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention" upon a finding that "the application of the guideline[s] would be unjust or inappropriate in a particular case … provided that the finding is based upon criteria established by the Supreme Court by general rule." 23 Pa.C.S.

§ 4322(a)-(b). *See also* Pa.R.C.P. 1910.16-5(a) ("If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline[s] amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.").[26] As previously noted, Rule 1910.16-5(b) sets forth the factors for deviating from the guidelines amount of support in both standard income and high income cases when special circumstances would render that amount unjust or inappropriate:

> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
>> (1) unusual needs and unusual fixed obligations;
>> (2) other support obligations of the parties;
>> (3) other income in the household;
>> (4) ages of the children;
>> (5) the relative assets and liabilities of the parties;
>> (6) medical expenses not covered by insurance;
>> (7) standard of living of the parties and their children;
>> (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
>> (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

---

[26] The note accompanying Pa.R.C.P. 1910.16-5(a) provides that "deviation applies to the amount of the support obligation and not to the amount of income." Here, the trial court concluded that Father was entitled to a downward deviation "of his income for support purposes" under factor (9) based upon his voluntary trust contribution. Amended Trial Court Order, 6/4/2015, at 24. The court further explained in its Pa.R.A.P. 1925(a) opinion that "[s]ince the monies were set aside for the [C]hildren in non-revocable trusts, the best interests of the [C]hildren were considered by the [c]ourt, but in its discretion, the [c]ourt believed that [Father] was entitled to a downward deviation of his 'extraordinarily' high income." Trial Ct. 1925(a) Opinion, 12/14/2015, at 34. We emphasize that, notwithstanding the court's language indicating that Father was entitled to a downward deviation of his "income," the court in fact applied the downward deviation to Father's support obligation. *See* Amended Trial Court Order, 6/4/2015, at 25-26 (applying downward deviation amount to monthly support obligations).

Upon review, we conclude that the trial court's decision to award a downward deviation of Father's support obligation based upon his voluntary trust contribution was in error. Put simply, a parent's voluntary contribution to a trust does not rise to the level of a special need or circumstance rendering the proper amount of support unjust or inappropriate. Rather, it is at best a laudable act which would be denigrated by a downward deviation, and at worst a nefarious manipulation of income for which a downward deviation would result in a troubling, if not unjust, award. To countenance a rule permitting consideration of a voluntary trust contribution for deviation purposes would be to permit an obligor to reduce his or her support obligation by unilateral action. We conclude that, irrespective of the donee's intent and any benefit ultimately received by the children, a policy legitimizing downward deviations of child support awards on this basis is not in the best interests of children. *Oeler by Gross v. Oeler*, 594 A.2d 649, 651 (Pa. 1991) (explaining that the purpose of child support "is to promote the best interests of the child").

Our conclusion in this regard is bolstered by *Sutliff*, *Portugal*, and *MacKinley*, the cases relied upon below, which are not directly on point nor binding on this Court, but do have similar policy considerations supporting their holdings, which are worthy of discussion. In *Sutliff*, an obligor used funds given by him and his parents to his children under the Pennsylvania Uniform Gifts to Minors Act (UGMA)[27] to pay a portion of his child support obligation. In addressing the propriety of the obligor's actions, a plurality of this Court, in an Opinion Announcing the Judgment of the Court (OAJC), concluded that "UGMA funds may not be used to fulfill the parent's support obligation where the parent has sufficient means to discharge it himself." *Sutliff*, 528 A.2d at 1320. The

---

[27] UGMA was the predecessor to the Pennsylvania Uniform Transfers to Minors Act, 20 Pa.C.S. §§ 5301-21.

OAJC further provided that, "[i]f the court determines that the parent can reasonably provide for [the children's] needs at an appropriate level, that obligation is paramount and the children's means should not be considered."[28]  *Id.* at 1324.

The plurality continued by explaining that if the parent's assets are inadequate to provide for the children's needs, the court should determine what amount of the parent's available assets should be paid toward the support obligation, absent agreement of the parties.  *Id.*  This is because granting the obligor "the unbridled right to pay as much of the children's support from UGMA funds as he or she sees fit … would be akin to removing the parent's support obligation to the extent the children have assets and is contrary to law."  *Id.*  The plurality explained that "a parent's obligation to support minor children is independent of the minor's assets" and that "[c]hild support is a parent's personal obligation and must be paid by him" or her.  *Id.* at 1320, 1324.

In *Portugal*, the Superior Court held that an employee's voluntary contributions to a 401(K) retirement plan must be included as income for child support purposes.  *Portugal*, 798 A.2d at 252.  The Superior Court further held that an employer's contributions to an employee's retirement plan are also to be included as income for support purposes, if the employee could access those contributions (regardless of penalties) at the time of the support calculation.  *Id.* at 253.  In so doing, the court

---

[28] The OAJC's holding stemmed from a rule developed in the Superior Court stating that "a court calculating child support may take a child's trust assets and income into account if the father's ability to pay is in doubt or the trust was specifically established for the support or education of the beneficiary-children."  *Sutliff*, 528 A.2d at 1323.  As explained above, the OAJC held that UGMA funds, like other assets, should also be considered if a parent's resources are lacking.  *Id.* at 1324.  The OAJC further held that "a court may more freely consider UGMA assets when apportioning financial responsibility for a child's education." *Id.* at 1325.  The OAJC further noted, however, that in the case before it there was no finding that the obligor's assets were lacking or that provision of a college education would impose any hardship on him and, in fact, the record belied any such problem.  *Id.*

observed that "children cannot wait for support, … [and] obligors should not be allowed the option of deferring income until the child reaches adulthood and no support obligation remains." *Id.* (quoting *Shaver v. Kopp*, 545 N.W.2d 170, 175 (N.D. 1996)) (internal quotation marks omitted). The court further explained that if it were to determine that the employer's matching contributions were not income, the employee could possibly "enter into an agreement with his employer to take less wages in exchange for a heightened matching contribution[,] effectively permit[ting] an employee to shield his income in an effort to reduce his child support obligation." *Id.*

Finally, in *MacKinley*, the Superior Court held that the value of vested stock options constitute income for purposes of calculating child support, regardless of whether the parent chooses to exercise them. *MacKinley*, 814 A.2d at 681. The court observed that the same concerns expressed in *Portugal* relating to the dominant interest of the children's immediate needs, the recognition that children should not be made to wait for support, and the possibility of a parent deferring income until they choose to avail themselves of it, were also present in *MacKinley*. *Id.* at 683. The *MacKinley* court further explained that the value of vested stock options is no less accessible than an employer's pension contributions and that, since stock options become accessible to a parent once vested, so too should they become available to the children. *Id.*

The above cases demonstrate that an obligor's unilateral, voluntary attempts at reducing his or her personal, independent child support obligation are looked upon with disfavor. While Father did not attempt to exclude his trust contribution from his income calculation, as in *Portugal* and *MacKinley*, or attempt to use the Children's assets to satisfy his support obligation, as in *Sutliff*, his receipt of a downward deviation based on that contribution has the same practical effect of enabling him to reduce his support

obligation through a voluntary, unilateral decision. Moreover, even though Father was neither a trustee nor beneficiary of the trust and the trust contribution ultimately benefits the Children rather than himself, these circumstances are insufficient to justify consideration of the trust contribution as a deviation factor. The above cases demonstrate that money that is available to the obligor should be made available to the children for their immediate needs. Additionally, we reiterate that deviation is warranted only when it is necessary to account for special needs and/or circumstances that render the guidelines amount of support unjust or inappropriate.

Thus, while a parent is free and, indeed, encouraged, to make contributions to a trust for the benefit of his or her children, such contributions are not to be considered in determining whether a parent's support obligation should be reduced.[29] In reaching this conclusion, we are unpersuaded by Father's argument that our holding will dissuade parents from making such contributions. Surely a parent who has the funds to do so, along with a genuine desire to secure his or her children's future, will make these contributions in addition to paying his or her support obligation. We think the risk is too great that, if we permit consideration of trust contributions as a deviation factor, some obligors will take advantage of such a rule to the detriment of their children. Thus, we agree with the Superior Court that the trial court erred in considering the trust contribution as a factor warranting a downward deviation in Father's support obligation pursuant to Rule 1910.16-5(b)(9).

### D. Attorney's Fees

#### i. Arguments

---

[29] When Father funds the trust and receives an approximate $100,000 downward deviation in child support for the year, he essentially imposes upon Mother and the Children the obligation to participate in his largesse. It is not the gift or trust but the involuntary usurpation of child support due Mother for Children which is impermissible.

In arguing that the award of attorney's fees to Mother was improper, Father contends that the Superior Court erred in concluding that he breached the PSA. Father claims that the Superior Court's conclusion was based upon its mischaracterization of his March 2013 letter as stating that "he no longer agreed to pay child support according to the [g]uidelines." Father's Brief at 55 (quoting *Hanrahan*, 151 A.3d at 205). Father argues that he did not breach the PSA when he asserted in his letter a good faith challenge to the extreme increase in his child support calculation under Mother's interpretation of the guidelines, and when he continued to pay, *inter alia*, the prior year's monthly rate of support by agreement of the parties. Father also argues that he cannot be in breach of the PSA when the support award was set at an amount that is not wholly based upon a recalculation of support as of May 1, in accordance with the PSA, but instead partially based upon amendments to the guidelines made months later.

Father additionally claims that the award of attorney's fees to Mother was improper because, as determined by the trial court and expressed in the Superior Court dissent, both parties had partially "flawed" arguments and neither party was "successful," as required under the PSA. Father argues that the Superior Court ignored the fact that Father prevailed on certain issues, including issues presented to the Superior Court. Father also contends that a decision by this Court reversing the Superior Court's erroneous interpretation of Section 4322 and the high income guidelines mandates reversal of the Superior Court's award of attorney's fees to Mother. Finally, Father argues that the award of attorney's fees was at best premature in light of the Superior Court's remand directive.

Mother contends that the Superior Court did not err by requiring Father to pay Mother's counsel fees. Mother argues that the PSA requires Father to pay child support to Mother based on the guidelines. According to Mother, Father challenged the

guidelines' applicability via letter, his reasonable needs analysis was thereafter rejected by the lower courts, and his support obligation was calculated under the guidelines. Thus, Mother claims that by failing to pay the guidelines amount of support until ordered to do so by the trial court, Father breached the PSA. Mother advances the Superior Court's reasoning that, because she was awarded child support in accordance with the guidelines as required by the PSA, she was successful in enforcing her rights under the PSA and entitled to attorney's fees.

Additionally, Mother contends that Father could have applied to the trial court seeking an adjustment of support as is plainly permitted by the PSA, but he did not. Mother contends that instead, after complying with the PSA for years, Father refused to pay child support in accordance with the guidelines in breach of the PSA, thereby requiring Mother to file the underlying action and incur substantial fees and costs, which Father should bear under the PSA's terms. Mother also disputes Father's arguments regarding his continued payment of the prior year's support amount, the mid-year adjustment of support based upon the high income guidelines amendments, his prevailing on certain issues, and the fee award being premature because, *inter alia*, those arguments cannot overcome the fact that Father breached the PSA for failing to pay support pursuant to the guidelines as he was contractually obligated to do.

ii. Analysis

It is well established that marital settlement agreements are governed by contract law and that, under the law of contracts, the court must ascertain the intent of the parties in interpreting an agreement. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). Moreover, unless a specific provision of the agreement states otherwise, "a provision regarding … counsel fees or expenses shall not be subject to modification by the court." 23 Pa.C.S. § 3105(c).

The parties' PSA provided the following relevant language concerning the award of attorney's fees:

> It is the specific agreement and intent of the parties that a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party to the extent the other party is successful in enforcing his or her rights under this [PSA].

PSA at 19.

Upon review, we conclude that the Superior Court erred in determining that Father was the "breaching or wrongdoing party" under the PSA. Pursuant to the terms of the PSA, child support was to be recalculated as of May 1 of each year "based on the parties' respective net incomes and Pennsylvania guidelines." PSA at 13. Father had paid support pursuant to the guidelines, as interpreted by Mother, for three years. After earning more than $15 million in 2012, Father informed Mother via letter that Mother and her counsel had "insisted on using the preliminary calculation [in the high income guidelines] as if it were a definitive determination of the amount of child support" in the past and that he acquiesced to the amount despite his disagreement with it "to avoid conflict," but that he could not "agree that the reasonable needs of two children could be anywhere close to the preliminary calculation amount" for the year at issue. Letter from Father to Mother, 3/6/2013.

Respectfully, read closely, Father's letter did not state, as the Superior Court found, that "he no longer agreed to pay child support according to the [g]uidelines." *Hanrahan*, 151 A.3d at 205. Rather, the letter merely included his objection to the calculation of support under the guidelines as interpreted by Mother. As the PSA provides only that the support award be based upon the "Pennsylvania guidelines," we do not equate Father's statements or his position as maintained throughout this matter

with a breach of the terms of the PSA. Rather, we view them as a challenge to Mother's interpretation of the guidelines, upon which his support obligation was originally based.

Assuming *arguendo* that Father did breach the PSA, we further conclude that, in light of our holdings herein, Mother is no longer the "successful" party in enforcing her rights under the PSA. The Superior Court supported its contrary conclusion by observing that the trial court awarded Mother support in accordance with the guidelines as required by the PSA's terms. However, this observation is necessarily premised on the fact that both the trial court and Superior Court interpreted the guidelines in accordance with Mother's position that no discrete consideration of reasonable needs is to take place in applying Rule 1910.16-3.1. However, this Court has now determined that the high income guidelines require separate consideration of the reasonable needs of the Children. Thus, Mother is no longer the successful party on that issue, and the Superior Court's conclusion to the contrary is necessarily superseded by the decision herein.[30] Accordingly, we hold that the Superior Court erred in reversing the trial court's amended order to the extent that it denied Mother's reimbursement claim for counsel fees.

## IV. Conclusion

In summary, we conclude that application of the high income child support guidelines found at Pa.R.C.P. 1910.16-3.1 requires discrete consideration of the reasonable needs of the children involved through application of its third step, which involves analysis of the deviation factors set forth in Pa.R.C.P. 1910.16-5(b) and the parties' income and expense statements. We further conclude that a voluntary

---

[30] The fact that Mother, as opposed to Father, first sought a judicial determination of child support pursuant to the PSA is of no moment, as it does not render Father the breaching or wrongdoing party, nor does it render her successful in enforcing her rights under the PSA.

contribution to a trust for the benefit of the children involved is an inappropriate factor to consider for deviation purposes under Pa.R.C.P. 1910.16-5(b). Finally, we hold that the award of attorney's fees to Mother in this case was improper at this juncture.

For these reasons, we vacate the Superior Court's judgment and the trial court's amended order of June 4, 2015. We remand the matter to the Superior Court for remand to the trial court for further proceedings and entry of an order that is consistent with this opinion.

Chief Justice Saylor and Justices Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring opinion.