J-A18013-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| M.M.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.W. | : | |
| | : | |
| Appellant | : | No. 23 WDA 2020 |

Appeal from the Order Entered December 18, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s): F-06-00884-001

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: FILED OCTOBER 07, 2020

J.S.W. (Father) appeals from the December 18, 2019 order that granted and/or dismissed the exceptions filed by Father and by M.M.W. (Mother) to the hearing officer's recommendations relating to Mother's petition to modify the amount of child support Father pays to Mother for the support of the parties' sixteen-year-old son, M.W. (Child).[1] After review, we affirm.

Father's brief delineates the issues he raises in this appeal, wherein he states:

> 1. The trial court erred as a matter of law and/or abused its discretion in granting modification and in adopting the hearing officer's conclusory findings that the child support provision in the parties' Marital Property Settlement Agreement is not fair and

_____

[1] As noted by the trial court, this matter concerns a high-income child support order. Essentially, Father contends that the trial court erred in setting aside the provision in the parties' marital settlement agreement providing for child support and setting an amount that allows Child to have a similar standard of living when in the custody of either Mother or Father.

reasonable, where neither the hearing officer nor the trial court performed any scrutiny of the [C]hild's reasonable needs.

2. The trial court erred as a matter of law and/or abused its discretion in issuance of a high-income support order where neither the hearing officer nor the trial court scrutinized Mother's budget and determined the [C]hild's reasonable needs.

3. The trial court erred as a matter of law and/or abused its discretion in failing to properly apply the support guidelines at Pa.R.C.P. 1910.16-3.1 and Hanrahan v. Bakker, 186 A.3d 958 (Pa. 2018)[,] as required in high-income cases.

4. The trial court erred as a matter of law and/or abused its discretion in its finding of Mother's income and her earning capacity for child support purposes.

5. The trial court erred as a matter of law and/or abused its discretion in awarding Mother counsel fees pursuant to 23 Pa.C.S.[] § 4351 in a proceeding to modify an existing support obligation.

Father's brief at 15-16.

When addressing such issues, we are guided by the following:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

Samii v. Samii, 847 A.2d 691, 694 (Pa. Super. 2004) (citations omitted). Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

- 2 -

> determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

> Hogrelius v. Martin, 950 A.2d 345, 348 (Pa. Super. 2008). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." Stokes v. Gary Barbera Enterprises, Inc., 783 A.2d 296, 297 (Pa. Super. 2001), appeal denied, 568 Pa. 723, 797 A.2d 915 (Pa. 2002). "[T]his Court is not free to usurp the trial court's duty as the finder of fact." Isralsky v. Isralsky, 824 A.2d 1178, 1190 (Pa. Super. 2003) (quoting Nemoto v. Nemoto, 423 Pa. Super. 269, 620 A.2d 1216, 1219 (Pa. Super. 1993)).

Mackay v. Mackay, 984 A.2d 529, 533 (Pa. Super. 2009).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Eleanor L. Bush of the Court of Common Pleas of Allegheny County, dated March 11, 2020. We conclude that Judge Bush's well-reasoned opinion correctly disposes of the issues that have been raised by Father.[2] Accordingly, we adopt Judge Bush's opinion as our own and affirm the support order on that basis.

Order affirmed.

_____

[2] Father's issues are all addressed by the trial court, but are discussed in a different order than that set forth by Father in his brief.

- 3 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2020

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## FAMILY DIVISION

| | |
|---|---|
| M.M.W.,<br><br>         Plaintiff,<br><br>   v.<br><br><br>J.W.,<br><br>         Defendant. | FD 06-000884-001<br><br>23 WDA 2020<br><br><br>**OPINION** |

By:

The Honorable Eleanor L. Bush
Allegheny County Court of
Common Pleas
440 Ross Street, Suite 5045
Pittsburgh, PA 15219

Copies to:

Pennsylvania Superior Court

Nicholas V. Corsetti, Esq.
Deputy Prothonotary
310 Grant St, Suite 600
Pittsburgh, PA 15219

Counsel for Plaintiff,

Daniel Glasser, Esquire
437 Grant Street, Suite 501
Pittsburgh, PA 15219

Counsel for Defendant,

Robb Bunde, Esquire
223 Fourth Avenue, Suite 500
Benedum-Trees Building
Pittsburgh, PA 15222

FILED

20 MAR 11 PH 3: 12

DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## FAMILY DIVISION

| | |
|---|---|
| M.M.W., <br><br>                       Plaintiff, <br><br>     v. <br><br><br> J.W., <br><br>                     Defendant. | FD 06-000884-001 <br><br> 23 WDA 2020 <br><br><br> **OPINION** |

## OPINION

Bush, J.                                           March 11, 2020

J.W. ("Father") is a multi-millionaire who exercises shared physical custody with M.M.W. ("Mother") of their 16 year-old son M.W. ("Child"). In this appeal Father challenges the Court's decision to set aside the child support provision of the parties' marriage settlement agreement and modify Father's child support obligation to afford Child the opportunity to experience a similar standard of living when in the custody of each parent. The Court suggests that the evidence and guiding case law support its decision.

2

## I.   Factual and Procedural Background

Father and Mother (collectively "Parents") married on July 5, 2003 and separated on June 15, 2006. In May 2008 Parents executed a Marital Property Settlement Agreement ("the Agreement"), and their divorce became final on June 11, 2008. Already wealthy at the time of the Agreement, Father agreed to pay Mother a lump sum of $1.5 million and an additional $162,000 over a period of three years as equitable distribution.[1] The Agreement also addressed child custody and support, limiting Father's child support obligation to no more than $2,500 per month.[2]

Father's wealth has increased several fold since 2008. Father is the CEO of his own company.[3] His business consists of buying, developing, and selling multimillion-dollar technology companies. Recent business successes include a sale that earned him $80 million in 2016. Since 2018, Father has earned approximately $1.46 million per year.[4] Father has investment accounts that held $53 million at the end of 2017.[5] Father also produced one personal checking account that held roughly $217,000 at the time of the 2018 Master's hearing.

---

[1] Exhibit 2, Sections IX(C).
[2] Exhibit 2, X, XIII.
[3] Tr. 237.
[4] This figure is not disputed by either party.
[5] Tr. 264-265.

Father maintains a standard of living consistent with his wealth. His primary residence is a $5.8 million home with a large saltwater pool and sports courts that Child enjoys when he spends time with Father.[6] Father owns two vacation homes and a Nautique boat that he purchased for $90,000. Father takes Child on expensive vacations which typically include first-class plane tickets and a week or more of international travel.[7]

Since 2008 Mother has primarily been an at-home parent. Mother earns approximately $39,465 from her part-time work managing rental properties that she purchased following the parties' divorce.[8] Mother worked for her father's company in the past, and she currently does bookkeeping work for him. She resides in a two-bedroom home of approximately 1,400 square feet that needs repairs to the windows, roof, and siding.

The parties have continuously engaged each other in litigation since their divorce 12 years ago. Father filed custody actions in 2010, 2014, 2015, 2016, and 2017.[9] The parties have also litigated matters associated with a real estate-related LLC they formed at the time of their divorce.[10] Following Mother's present action for modification of child support, Father attempted, unsuccessfully, to have

---

[6] Tr. 247-248.
[7] Tr. 280.
[8] Tr. 11-16.
[9] Exhibit G.
[10] Tr. 29-30, 83, 87.

4

Mother's counsel disqualified. The years of litigation have strained Mother's financial resources.

On May 1, 2017, Mother filed for modification of child support. This Court denied Mother's Motion for Modification on June 19, 2017, and Mother appealed. Recognizing its initial denial as premature, the Court requested that the Superior Court remand the matter for a hearing. The Superior Court accordingly remanded the matter on October 23, 2017. The Court then referred the matter to one of the Court's permanent Masters, directing that the Master determine whether the child support provision in the Agreement was fair and reasonable and did not prejudice the welfare of the Child.[11] The Court also directed the Master to address Mother's request for modification of support.

Master Tricia Sorg conducted a two-day hearing on September 17 and 18 of 2018. Witnesses at the hearing included Mother, Father, Mother's counsel, Mother's accounting expert, Father's accounting expert, and Father's vocational expert. The Master admitted a total of 25 exhibits. The evidence presented at the hearing demonstrated a considerable gap between Mother's and Father's standards of living and their vastly disparate incomes.

---

[11] As set forth in *Roberts v. Furst,* 561 A.2d 802 (Pa.Super. 1989).

Master Sorg issued her Hearing Summary and Recommendations on March 27, 2019. The Master recommended that the Court set aside the Agreement's child support provision as neither fair nor reasonable under the circumstances. Consequently, the Master applied the high-income child support guidelines to her income calculations, resulting in the recommendation that Mother was entitled to modification of child support. The Master accepted the guidelines calculation as establishing a fair and reasonable child support award; she recommended that support be set at the guideline amounts of $38,083 per month for the year 2017 (reflecting Father's unusually high income for that year) and $9,857 per month for 2018 onward. The Master also recommended awarding Mother 50% of her counsel fees.

Both parties timely filed exceptions to the Master's Recommendations. Father challenged most aspects of the Master's recommendation. Mother agreed with the Master's recommendation to set aside the Agreement's child support provision, but challenged the Master's income calculation and sought a higher counsel fee award. The Court heard argument on the parties' exceptions on June 4, 2019 and entered its Order on Exceptions on December 18, 2019.

The Court accepted the Master's recommendation to set aside the Agreement's child support provision as well as her recommendation regarding counsel fees. The Court departed from the Master's findings regarding Mother's

6

income. The Court then used the revised figures to re-calculate the high income support guidelines, resulting in a monthly child support obligation of $8,539.74 Finally, as required by *Hanrahan v. Bakker*, 646 Pa. 678 (2018), the Court examined the parties' expense statements and Mother's proposed budget to determine whether to deviate from the guidelines amounts. The Court determined the Child's reasonable needs to be $19,618 per month, which resulted in a downward deviation for 2017 and an upward deviation for 2018 onward. Accordingly, the Court ordered that Father pay $19,521.87 per month for 2017 and $19,225.64 per month for 2018 onward.

## II. Issues on Appeal

Father filed a timely appeal, in which he raises five issues, paraphrased as follows:

1. The Court erred by refusing to enforce the child support provision of the Agreement.

2. The Court failed to properly apply the guidelines and *Hanrahan v. Bakker* as required in high income cases.

3. The Court erred by failing to scrutinize Mother's budget and determine the Child's reasonable needs.

4. The Court erred by awarding Mother counsel fees.

5. The Court erred in its calculation of Mother's income.

7

## III. Validity of Marriage Settlement Agreement

Father seeks to enforce the child support provision of the Agreement which purports to limit his support obligation to a maximum of $2,500 per month. The evidence and the applicable law support the Court's decision to set aside this provision.

Generally, courts enforce marriage settlement agreements. Parties to a divorce action may bargain between themselves and structure a marriage settlement agreement as best serves their interests.[12]

In contrast, courts treat child support provisions differently. Parents cannot bargain away a child's right to support.[13] When interpreting parents' agreements, courts must protect the child's best interest.[14] Courts will enforce agreements regarding child support if they are fair and reasonable.[15] Where the amount agreed upon differs significantly from the guidelines range, courts may presume that the agreement does not provide fair and just support for the child.[16]

Here, the Court determined that the child support provision in the Parents' agreement was neither fair nor reasonable. The credible evidence at the hearing

---

[12] *Brown v. Hall*, 435 A.2d 859 (Pa. 1981).
[13] *Knorr v. Knorr*, 588 A.2d 503 (Pa. 1991).
[14] *Id.* at 505.
[15] 561 A.2d 802.
[16] *Kost v. Kost*, 757 A.2d 952 (Pa.Super. 2000).

8

established that Child enjoys a far different lifestyle with Father than he does with Mother. Father's primary residence is a $5.8 million home. Father also owns a $4.9 million vacation home and a boat. Father's residence includes extravagant amenities such as a theater, home gym, a pool with a pool house, and sports courts that Child can enjoy while with Father. Father also takes Child on expensive vacations, which typically include first-class plane tickets and a week or more of international travel.[17] Mother's home does not offer any of the amenities that Father enjoys. Mother's current child support and income do not allow her to come anywhere to close to providing a lifestyle for Child similar to that he experiences when with Father.

Pennsylvania appellate courts have invalidated support provisions similar to the one at issue here. For example, in *Kraisinger v. Kraisinger*, 928 A.2d 333 (Pa.Super. 2007), the parties' marriage settlement agreement provided that husband pay $3,000 per month for four years to support his wife and their four children. After the first four years, the payment declined to $500 per month per child, and wife waived the right to seek additional child support. The wife filed for additional child support three years after signing the agreement. The Superior Court held that the agreement, which required husband to pay substantially less

---

[17] Father alleged that he spends $2,700 per month of his $121,647 monthly net income on the Child. The Court did not find this testimony credible.

than the guidelines would require, was not fair or reasonable and prejudiced the welfare of the children.[18]

In *Knorr v. Knorr*, the parties entered a marriage settlement agreement that required the husband to pay the wife $200 per month in child support until he obtained employment.[19] Later, the wife filed for an increase in child support. The Pennsylvania Supreme Court concluded that the parties' agreement could not bind the court, and gave only advisory effect to the agreement. The Court held that in exercise of its duty to provide for the best interest of the child, the court may order more child support than an agreement provides.[20]

In this matter, the credible evidence showed the large gap between Mother's and Father's incomes, assets, and lifestyles. Under the circumstances, the Court found that $2,500 per month from Father in support of Child is neither fair nor reasonable. The Court's decision comports with appellate court treatment of similar agreements and should be affirmed.

---

[18] 928 A.2d 333.
[19] 588 A.2d at 504.
[20] *Id.* at 505.

IV.  Mother's Income

The Court next addresses Father's last issue on appeal, regarding the Court's calculation of Mother's income. Here, the Court exercised its discretion as factfinder and departed from the Master's recommendation in one key respect. The evidence supports the Court's finding.

The parties agree that Mother earns $39,465 per year from her three rental properties, as the Master and the Court concluded. Two issues comprise Father's challenge: whether the Court rightly rejected Father's request to assign Mother an earning capacity and whether the Court rightly rejected the Master's attribution to Mother of $57,139 in annual "unknown income."

Father presented an expert witness who opined that Mother had an earning capacity of approximately $75,000 per year, which would likely increase to $90,000+ within two years.[21] Neither the Master nor the Court found this expert testimony credible in light of Mother's limited work experience and salary history. The evidence established that Mother's most recent staff position was in 2008 where Mother worked as a sales representative for a granite company earning approximately $25,000 per year.[22] Since then, Mother has been out of the work

---

[21] Exhibit A.
[22] Tr. 11.

11

force and has primarily been a stay at home parent, apart from managing her rental properties and helping her father with bookkeeping.

Mother is 53 years old. The Court did not find it credible that Mother could re-enter the workforce at her age, with her level of experience, and immediately begin earning $75,000 per year. Mother's current income, though not high, is well above many low-wage hourly pay rates, and no evidence was presented to support a finding that Mother could increase that amount by obtaining a full-time position or by adding a part-time position that would feasibly both accommodate and supplement her current work.

Father's accounting expert opined that Mother's annual earnings for 2017 and 2018 included $57,139 in "unknown income" for which there was "no explanation."[23] Despite not knowing the source of the deposits into Mother's accounts, the expert included them as annual income for Mother. Mother, however, provided an explanation that this Court found credible. She explained that none of the money went towards her own expenses. Rather, some deposits constituted reimbursement for her father's business expenses. The remaining deposits constituted occasional loans from Mother's sister, which helped make it possible for Mother to take Child on vacation. Based on this evidence, the Court rejected the Master's finding and excluded this amount, thereby reducing Mother's income.

---

[23] Tr. 406.

## V. Application of *Hanrahan*, Child's reasonable needs, and Mother's budget

Father's second and third issues on appeal challenge the Court's application of the high income guidelines and governing caselaw to determine Father's child support obligation. The Court will consider Father's second and third issues together.

In *Hanrahan*, the Pennsylvania Supreme Court established the following framework for determining child support obligations in high income cases: first, apply the high-income guidelines; second, examine the parties' income and expense statements to determine the child's reasonable needs; and third, deviate up or down from the guidelines to meet those reasonable needs. The Court properly conducted each step and the record supports the Court's result.

The Court agreed with the Master that the first step is to apply the guidelines. Because the Court recalculated Mother's income and arrived at an amount lower than the Master recommended, the Court then recalculated the guideline amount. The 2018 figures resulted in child support of $8,539.74 per month.[24]

The Master's analysis ended there. She recommended that the Court accept the guideline figures as equivalent to the Child's reasonable needs. Father correctly

---

[24] Father's monthly income of $121,647.33 plus Mother's monthly income of $2,714.54 equals a combined monthly income of $124,361.87. This results in a guideline child support amount of $8,539.74 per month.

13

argued on exceptions that *Hanrahan* requires further analysis. Thus, the Court next reviewed the parties' income and expense sheets in light of the deviation factors.[25]

Father's undisputed monthly income is $121,647. He asserted that his expenses related to Child's support amount to $2,700 per month. The Master found that Father's testimony lacked credibility and the Court deferred to the Master's credibility assessment. Further, and more significant to the Court's analysis, Father's view of expenses fails to recognize that his considerable assets permit a high standard of living that may not require separate monthly expenses for Child.

Mother presented a budget that focused on expenses she desires to incur to permit her to provide Child a lifestyle in her care that is more like Father's. For example, Mother does not have the wealth to own a home with an expensive pool, so she included a country club membership in her proposed budget. Similarly, Mother does not have a home gym or sports court, so she allocated a large portion of her proposed budget to extracurricular activities and entertainment for Child.

The Court found persuasive the Superior Court's approach in *Metzker v. Marlowe*.[26] In *Metzker*, a multi-millionaire father was ordered to pay $5,730 per month for support of the parties' child. The mother filed exceptions to the order and submitted an expense sheet as required in high-income cases. Her expense

---

[25] Pa. R.C.P. 1910.16-5.
[26] No. 456 EDA 2019, 2019 WL 5212423 (Pa.Super. October 16, 2019).

14

sheet included name brand clothing, vacations, theater trips, and a new car. The mother argued that those expenses were not incurred because she could not afford to pay them, but would have been incurred if the father had been paying child support in accordance with his income. In addressing the mother's appeal, Superior Court concluded that the trial court should have conducted a reasonable needs analysis by assessing the deviation factors in Pa. R.C.P. 1910.16-5 and making findings as to whether the budget items are reasonable.

Here, the Court considered the deviation factors together with the parties' expense statements in order to determine the Child's reasonable needs, as required by *Hanrahan.* In doing so, the Court particularly considered evidence that related to deviation factors (b)(5) and (b)(7). Regarding assets and liabilities of the parties, the Court relied upon the evidence of Father's real estate holdings and investment accounts, and the evidence presented by Mother about her rental properties and debts.[27] In regards to deviation factor (b)(7), the credible evidence discussed above established that Mother and Father enjoy vastly different standards of living. These factors potentially supported an upward deviation, but the Court then needed to focus on Mother's budget.

---

[27] Mother has $11,000 in credit card debt and her attorney testified that Mother owed his firm $98,315 in counsel fees (Tr. 36, 186).

15

The Court accepted Mother's budget as reasonable, minus her legal fees and office expenses. The Court thus determined that $19,618 per month would adequately account for the Child's reasonable needs.[28] For the year 2017, the Court made a downward deviation from the guidelines and determined Father's support obligation to be $19,521.87 per month.[29] For 2018 onward, the Court made an upward deviation and determined Father's support obligation to be $19,190.33.[30] Per *Hanrahan*, the Court considered the parties' income and expense sheets together with the deviation factors set forth in Rule 1910.16-5 to arrive at an amount that supports the Child's reasonable needs. In light of the relative assets and liabilities of the parties, as well as their standards of living, the Court found that the guideline support amount warranted a downward deviation for 2017 and for 2018 an upward deviation based on the Child's reasonable needs.

VI.   Counsel fees

Finally, Father argues that the Court erred in awarding Mother $49,157 in counsel fees pursuant to 23 Pa.C.S. §4351. The Court properly exercised its discretion in deferring to the Master's recommendation regarding counsel fees.

---

[28] Legal fees and office expenses totaled $9,933 per month. The Court subtracted this amount from Mother's $29,551 budget to arrive at $19,618.

[29] Father earned $10.4 million in 2017. The guideline child support amount would have been $38,167.48 per month.

[30] The Court deviated upwards from $8,539.74 (the guideline amount for the parties' annual incomes of $1.46 million and $39,465).

16

Under 23 Pa.C.S. § 4351, if an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses. In awarding counsel fees, a court may consider the conduct of the obligor and whether the parties have disparate financial positions.[31] The overriding concern is the best interest of the child.[32] Additionally, the Court is entitled to defer to a master's report and recommendation.[33]

Courts have upheld awards of counsel fees in child support cases where one factor was the parties' disparate financial positions. In *Suzanne D. v. Stephen W.*, the Superior Court upheld a $22,000 award of counsel fees where the father's income was almost 9 times higher than the mother's income. The Court held the trial court correctly considered the financial difficulty mother would face if she had to pay her total fees and how it would adversely affect the child.[34] Courts may also consider the conduct of the parties during litigation in awarding counsel fees. In *Krebs v. Krebs,*[35] Superior Court awarded $15,408 in counsel fees to a mother based on the father's unreasonable conduct during litigation.

---

[31] *Suzanne D. v. Stephen W.*, 65 A.3d 965 (Pa.Super. 2013).
[32] *Id.*
[33] *Moran v. Moran*, 839 A.2d 1091 (Pa.Super. 2003).
[34] 65 A.3d 965, 976.
[35] 975 A.2d 1178 (Pa.Super. 2009).

Here, Mother was seeking $98,315 in counsel fees pursuant to 23 Pa.C.S. §4351. The Master awarded Mother 50% of her counsel fees, citing discovery issues with Father.[36] The Court deferred to the Master on this issue, an exercise of discretion supported by the parties' disparate incomes, Father's conduct during litigation, and the Child's best interests. It is undisputed that the parties have vastly disparate incomes. As for Father's conduct during the litigation, Father failed to turn over various financial documents, leading to a hearing in front of a discovery master and thus higher legal fees. Father also attempted to have Mother's counsel disqualified after she filed for modification, which also resulted in more litigation and higher fees for Mother. Further, it would be in the Child's best interest that Father pay 50% of Mother's counsel fees. Putting Mother further into debt would not be in the Child's best interest and would severely limit Mother's ability to maintain the lifestyle that Child is accustomed to. The Court did not abuse its discretion in deferring to the Master's recommendation.

---

[36] Master's Report and Recommendations, Page 3.

18

## VII.  Conclusion

For the reasons discussed above, the Superior Court should dismiss Father's

appeal and affirm the Court's Order of December 18, 2019.


By the Court:


The Honorable Eleanor L. Bush

19