J-S33005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

EDWARD B. BARNABEI     :    IN THE SUPERIOR COURT OF
                      :          PENNSYLVANIA
         Appellant      :
                      :
                      :
         v.              :
                      :
                      :
DONNA M. DEVITIS         :    No. 2299 EDA 2021

Appeal from the Order Entered September 22, 2021,
in the Court of Common Pleas of Montgomery,
County Civil Division at No(s):  2003-06071,
PACSES 420103824.

EDWARD B. BARNABEI     :    IN THE SUPERIOR COURT OF
                      :          PENNSYLVANIA
                      :
         v.              :
                      :
                      :
DONNA M. DEVITIS         :
                      :
         Appellant      :    No. 2553 EDA 2021

Appeal from the Order Entered September 22, 2021,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s):  2003-06071,
PACSES 420103824.

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED JANUARY 10, 2023**

In this consolidated matter, Appellant/Cross-Appellee Edward B. Barnabei (Father) and Appellee/Cross-Appellant Donna M. Devitis (Mother) appeal from the order establishing Father's child support obligation. This case

concerns, among other issues, our Rules of Civil Procedure governing deviations from the basic child support schedule. The trial court imposed two separate deviations: 1) Father's lack of custody; and 2) the Child's unusual needs. *See* Pa.R.C.P. 1910.16-4 (Explanatory Comment – 2010); Pa.R.C.P. 1910.16-5(b). After review, we affirm the trial court's substantive child support decisions, but remand, per the trial court's request, to allow the court to correct an administrative oversight.

At issue is the support of the parties' 20-year-old son, J.D. (the Child). Although the Child has reached the age of majority, it was uncontested that he was still entitled to support given his severe physical and mental disabilities.[1] Father has not exercised custody of the Child in over a decade. Mother acts as the Child's fulltime caretaker and does not work. Father is employed as a nurse anesthetist.

The litigation has been extremely protracted and was already the subject of multiple appeals. We summarize the procedural history as follows. In 2017, Mother filed a petition to modify the parties' 2013 child support order. The parties' case was heard by a hearing officer, who made findings and issued a recommended order. Dissatisfied with the order, the parties then filed exceptions with the trial court. The trial court remanded the case back to the

---

[1] The Child has suffered disabilities for most of his life. The diagnoses include autism spectrum disorder and Tourette's Syndrome. The Child also requires physical therapy. *See* 23 Pa.C.S.A. § 4321 (3) ("Parents may be liable for the support of their children who are 18 years of age of older.").

hearing officer.   This cycle continued over the next four years until, after the fifth round of exceptions, the trial court issued the final appealable order[2] on September 22, 2021.[3]

These consolidated appeals primarily concern the trial court's imposition of an upward deviation from Father's basic child support obligation.  Our Rules of Civil Procedure provide that an upward deviation might be appropriate when an obligor-parent exercises little or no custody. *See* Pa.R.C.P. 1910.16-4 (Explanatory Comment – 2010).  Independent from the custody basis for an

_____

[2] This Court had previously quashed an appeal from 2020, holding that the matter was interlocutory given the trial court's remands to the hearing officer. *See* T.C.O. at 10.

[3] We recognize that Montgomery County employs an exceptions procedure to adjudicate support matters. *See* Pa.R.C.P. 1910.12. Such a procedure is designed to make the resolution of support matters efficient.  Here, however, there was a breakdown in court operations, which we assume was exacerbated by the COVID-19 pandemic.  But we note that the trial court was under the impression that *only* the hearing officer could make the requisite findings and that it was the trial court's role to review those findings. *See* Trial Court Opinion, 3/29/22, at 2.

This is incorrect. "[T]he trial court cannot delegate its judicial duty as ultimate finder of fact; although the trial court's scope of review is limited to evidence received by the hearing officer, 'the trial court is obligated to conduct a complete and independent review of the evidence when ruling on exceptions.'" *Sirio v. Sirio*, 951 A.2d 1188, 1196 (Pa. Super. 2008) (quoting *Cunningham v. Cunningham*, 548 A.2d 611, 613-14 (Pa. Super. 1988)).

If the trial court was dissatisfied with the timeliness of hearing officer's orders, or the hearing officer's ability to comprehend its remand instructions, we remind the trial court that it possessed the authority to streamline the process and hold its own hearing.  A trial court should do this, particularly in instances where the only issue on remand is an administrative recalculation using figures that are no longer in question.

upward deviation, a deviation might also be appropriate due to several other factors, including the Child's unusual needs. *See* Pa.R.C.P. 1910.16-5(b)(1)-(9).

At one point during the litigation, the trial court seemingly ruled that Mother was not entitled to a deviation under Rule 1910.16-5, because she failed to provide sufficient evidence relating to the Child's unusual needs. However, the following year, a new trial judge took over the case. The new judge ruled that Mother had preserved her ability to raise the unusual needs deviation issue.

The parties' ultimate child support order was broken down by year, from 2017 through 2021. The order included an upward deviation due Father's lack of custody time, per Rule 1910.16-4, amounting to an additional 30% of Father's base support obligation, as well as a separate upward deviation of $300 due to the Child's unusual needs, per Rule 1910.16-5(b). The parties filed an appeal and cross-appeal, respectively.

Father presents the following issues:

1. Whether the trial court erred as a matter of law and committed an abuse of discretion in finding that the February 25, 2019 Order, Part One, entered by a transferor judge did not resolve finally the issues raised in Mother's petition to modify support filed on June 22, 2017, and as a result, violated the rule of coordinate jurisdiction?

2. Whether both the trial judges erred and committed an abuse of discretion in 1) finding that $300 was a reasonable upward deviation for Father's lack of physical custody when there was no evidence of record supporting such a deviation and 2) finding that

the Guidelines authorize an automatic 30% upward deviation from Guideline Amount when a parent does not exercise physical custody of a child?

Father's Brief at 11-12 (cleaned up).

Mother presents the following cross-appellate issues, which we have reordered for ease of disposition:

1. Whether the court erred and committed an abuse of discretion by limiting the upward deviation from the support guidelines based upon the costs incurred by the Mother related to the Child's significant disabilities, in violation of Pa.R.C.P. 1910.16-5(a) and (b), where Mother was denied the opportunity to present testimony of herself and relevant witnesses as to the financial impact of the Child's disabilities upon the household. The factors that impact Mother's financial status include, but are not limited to, Mother's inability to work due to the need to provide direct care for the Child?

2. Whether the court erred by limiting the upward deviation for the Father's lack of custody to the amount of $300 per month where Mother established that she incurs expenses in excess of that amount and where Mother was denied a full and fair opportunity to present evidence of such expenses?

3. Whether the court erred and committed an abuse of discretion by failing to grant Mother's request to conduct discovery related to Father's income and employment status?

4. Whether the court erred by affirming the support hearing officer's July 19, 2021 order addressing Father's obligation to pay 100% of unreimbursed medical expenses insofar as that order fails to specify that Father's responsibility to reimburse 100% of medical expenses includes reimbursement for medical, therapeutic, psychological and counseling expenses pursuant to Pa.R.C.P. 1910.16-6(c), despite that issue having been raised in Mother's Exceptions filed on August 9, 2021?

Mother's Brief at 5.

We begin with our standard of review:

We review child support awards for an abuse of discretion. A court does not commit an abuse of discretion merely by making an error of judgment. Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. This Court has further observed that we will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support actions.

*Hanrahan v. Bakker*, 186 A.3d 958, 966 (Pa. 2018) (citations omitted).

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted).

In Pennsylvania, child support awards are calculated in accordance with specific statutory guidelines, using a complex system that accounts for the obligor's capacity to pay and the reasonable needs of the particular children. *Commonwealth v. Hall*, 80 A.3d 1204, 1216 (Pa. 2013); *see also* 23 Pa.C.S.A. § 4322(a); 42 U.S.C. § 667(a), (b)(2). The guidelines provide comprehensive instructions for calculating child support awards based on the obligor's net income from all sources. *Id*. at 1217; *see also* 23 Pa.C.S.A. § 4322(a). Those guidelines are based on the reasonable needs of the child, and they specify how child support shall be calculated. "In determining the reasonable needs of the child or spouse seeking support and the ability of the

obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." 23 Pa.C.S.A. § 4322(a). "The Pennsylvania Rules of Civil Procedure 1910.16-1 *et seq.*, which became effective in 1989, represent this Court's manifestation of these principles." **Hanrahan**, 186 A.3d at 966-67.

### A. Deviation for child's unusual needs.

We first address both parties' claims regarding an upward deviation for the Child's unusual needs under Rule 1910.16-5. Disposition of these claims necessitates a deeper analysis of one aspect of the procedural history. In February 2019, the trial court was tasked with adjudicating the parties' second round of exceptions. The hearing officer had previously recommended two upward deviations: one for Father's lack of custody under Rule 1910.16-4; and one for the Child's unusual needs under Rule 1910.16-5. But the trial court had remanded the case for the hearing officer to take additional evidence and testimony, and determine whether those deviations had an evidentiary basis.[4]

---

[4] Regarding the Child's unusual needs, the previous support obligation from 2013, included an upward deviation totaling $330. Evidently, the purpose of the remand was for the hearing officer to take evidence to determine whether the $330 figure was still appropriate.

After the remand hearing, the hearing officer reported back to the trial court that an upward deviation due to Father's lack of custody time was still appropriate under Rule 1910.16-4, even though Mother presented no testimony as what a reasonable deviation should be. As to the deviation under Rule 1910.16-5 (relating to the Child's unusual needs), the hearing officer reported that Mother presented no evidence of expenses that she actually incurred. Thus, the hearing officer did not recommend a secondary deviation due to the Child's special needs.

In issuing this recommendation, however, the hearing officer made a procedural mistake. During the interim, in 2018, the parties filed new modification petitions – not to be confused with Mother's 2017 modification petition, which underpinned the litigation. The hearing officer's mistake was that she consolidated the new modification petitions with the remand directive and issued one consolidated proposal. Thus, when the trial court issued its February 25, 2019 order adjudicating the exceptions, the court was attempting to untangle the hearing officer's consolidation.

The trial court's first task was determining whether the hearing officer followed its remand directive – that is, whether the hearing officer changed her mind about her proposed upward deviations in light of Mother's evidence (or the lack thereof).[5] In Part One of its February 25, 2019 order, the trial

---

[5] The trial court's second task was how to proceed with the 2018 petitions, which the hearing officer mistakenly incorporated into the ongoing litigation from Mother's 2017 petition. These findings were detailed in Part Two of the court's February 2019 Order.

- 8 -

court agreed with the hearing officer's recommendation that an upward deviation **was** appropriate under Rule 1910.16-4 due to Father's lack of custody time, even though Mother failed to present evidence of what a reasonable custody deviation should be.  Furthermore, trial court agreed with the hearing officer's recommendation that a deviation **was not** warranted under Rule 1910.16-5, because Mother failed to present documentation of expenses she incurred as a result of the Child's unusual needs.  These findings were detailed in Part One of the trial court's February 25, 2019 Order:

> A review of this record shows that mother did not present clear, specific, and precise documentary evidence of her out-of-pocket expenses spent on the Child's special needs, even though ordered by the undersigned to do so.

Order of Court, 2/25/19.

Mother filed for reconsideration, which the trial court denied on April 2, 2019.  However, the court attempted to clarify its prior order:

> Unfortunately, the hearing officer mixed together two separate proceedings.
>
> First, the hearing officer properly followed the court's instructions and diligently took testimony (in two hearings) following the undersigned's remand order for which the court is appreciative.  […]
>
> Second, the hearing officer took testimony and completed and closed the hearing on bother parties' petitions to modify.  This was completely separate from, and completely different from, the undersigned's remand order on different issues.  **The lengthy hearing on the parties' petitions to modify has been concluded. Neither side will get a second bite of the apple on that hearing.  The court will not-reopen that hearing to allow additional testimony or exhibits from either side.** […]

> The reason the court entered the two-part order of February 25, 2019 was that, even though the DRO and the hearing officer may have been well intentioned in combining both the remand order and the petitions to modify in one proceeding, it caused the undersigned confusion when reading the combined hearing officer's interim order of November 21, 2018 and the parties' briefs thereafter on exceptions. […]

> That two-part order, addressed, in the first part of the order, the undersigned's remand order, and in the second part, addressed, procedurally, the petitions for modification. In this way, there will be two separate orders from the hearing officer, one on the remand matter and one on the petitions to modify. It will be done in lock-step manner. It is purely procedural, straightforward, and correct. ***Either party may file exceptions. All issues are preserved for argument. It is as simple as that.***

Order of Court, 4/2/19 (emphasis added).

As discussed ***infra***, it is Father's position that the February 25, 2019 order meant that Mother was not entitled to a deviation under Rule 1910.16-5 (relating to a child's unusual needs) – that this question was settled once and for all by the February 2019 order.

The trial judge who issued the February 2019 order – The Honorable Emanual A. Bertin – was replaced by the Honorable Daniel J. Clifford in 2020. In subsequent proceedings, Judge Clifford did not believe that Mother was foreclosed from obtaining a secondary deviation for the Child's unusual needs; instead, Judge Clifford was persuaded by the proviso contained in the April 2019 clarification order, which provided: "Either party may file exceptions. All issues are preserved for argument. It is as simple as that." ***Id.***

- 10 -

When the case returned to the trial court for exceptions in August 2020, Judge Clifford concluded that, in addition to an upward deviation for Father's lack of custody, a secondary deviation under Pa.R.C.P. 1910.16-5 was appropriate after all. ***See*** Trial Court Opinion (T.C.O.), 3/29/22 at 8-9. The court capped this secondary deviation at $300, slightly less than the $330 deviation imposed in the parties' 2013 child support order. ***Id.*** at 9.

On appeal, Father argues that the phrase "all issues are preserved" did not apply to Part One of the February 2019 Order resolving the deviation issue, but only to Part Two of the February 2019 Order resolving the newly filed 2018 modification petitions. He maintains that when Judge Clifford awarded a deviation in August 2020, Judge Clifford effectively undid what Judge Bertin had ordered in February 2019. ***See*** Father's Brief at 29. According to Father, Judge Clifford erred because he violated the rule of coordinate jurisdiction. Meanwhile, Mother argues that the deviation amount was erroneous, because she was not afforded an opportunity to present evidence supporting a higher figure. We address each claim in turn.

### i. Father's claim regarding the unusual needs deviation.

Father's first issue under the unusual needs deviation concerns what he deems to be an inconsistent ruling by the trial court, thereby implicating the coordinate jurisdiction rule. ***See*** Father's Brief at 26. The coordinate jurisdiction rule provides that where a case is transferred between judges of coordinate jurisdiction, a subsequent jurist should not alter the determination

of a prior jurist. ***Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa. 2003). The rule acts "to protect the expectations of the parties, to ensure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to litigation." ***Id.*** In service of these goals, the coordinate jurisdiction rule is subject to exception only in "exceptional circumstances," such as 1) where there is an intervening change in the controlling law, 2) substantial change in the facts or evidence giving rise to the dispute, or 3) where the prior holding was clearly erroneous and would create a manifest injustice if followed. ***Commonwealth v. Starr***, 664 A.2d 1326, 1332 (Pa. 1995).

Father's claim – that Judge Clifford's August 2020 award of a Rule 1910.16-5 deviation violated the rule of coordinate jurisdiction – presupposes that Judge Bertin's February 2019 order constituted a final determination that Mother was not entitled to such a deviation. First and foremost, we are not convinced that Judge Bertin made a definitive determination in 2019. We agree with Judge Clifford's rationale that Judge Bertin, in his April 2019 clarification order, expressly permitted Mother to re-raise the deviation issue during the next round of exceptions when he stated: "***All*** issues are preserved. It is as simple as that." Order of Court, 4/2/19 (emphasis added). In our

- 12 -

view, Judge Clifford did not "alter the determination of a prior jurist," and thus we conclude that the rule of coordinate jurisdiction is inapplicable in this case.[6]

But even if we were to conclude that Father is correct, that Judge Bertin's February 2019 order was meant to foreclose Mother from re-raising the Rule 1910.16-5 deviation issue, and that the rule of coordinate jurisdiction did apply, we would still discern no error.

As noted above, a court may alter the prior ruling of a previous jurist in exceptional circumstances, e.g., when the ruling was "clearly erroneous" and would have created "a manifest injustice if followed." *See Starr*, 664 A.2d at 1332. If Judge Bertin determined that a Rule 1910.16-5 deviation was not allowable based on Mother's faliure to provide documentation of incurred

---

[6] We do not overlook Judge Bertin's other language from the April 2019 clarification order. Father argues that Judge Bertin foreclosed deviation issue when Judge Bertin stated:

> The lengthy hearing on the parties' petitions to modify has been concluded. Neither side will get a second bite of the apple on *that* hearing. The court will not reopen *that* hearing to allow additional testimony or exhibits from either side.

*See* Order of Court, 4/2/19 (emphasis added)

First, we construe this provision to apply to the parties' 2018 modification petitions, not necessarily to Mother's 2017 petition (which encapsulated the deviation question). Second, even if we were to find that Judge Bertin meant to foreclose new testimony and evidence about the deviation question, it does not follow that Judge Bertin meant to foreclose Mother from re-raising the deviation question all together. It would just mean that Mother was bound by the evidentiary record as it then stood.

expenses, then that determination would have met the "clearly erroneous" standard.

To explain, when deciding whether to deviate from the basic child support obligation is appropriate, the trier-of-fact **shall** consider, among other factors: the unusual needs and unusual fixed obligations; other household income; the child's age; the parties' relative assets and liabilities; medical expenses not covered by insurance; the parties' and the child's standard of living; and other relevant and appropriate factors, including the child's best interest. **See** Pa.R.C.P. 1910.16-5(b)(1), (3), (4)-(7), (9).

Judge Bertin's determination would have been erroneous for two reasons. First, the unusual needs of the child is but one factor the trier-of-fact must consider. Judge Bertin's February 2019 order limiting any potential 1910.16-5 deviation to only this one factor – (b)(1) – would have been improper, because the hearing officer would have been prevented from considering other mandatory and relevant factors, such as: (b)(3)("other household income"); (b)(4)("the child's age"); (b)(5)("the parties' relative assets and liabilities"); (b)(6)("medical expenses not covered by insurance"); (b)(7)("the parties' and the child's standard of living"); (b)(9)("other relevant and appropriate factors, including the child's best interests.").

Second, Judge Bertin's determination would have misapplied the text of Rule 1910.16-5(b)(1). That provision mandates that the trier-of-fact consider the child's "unusual needs and unusual fixed obligations." To be sure, the obligee's expenditures on those fixed obligations is certainly relevant

- 14 -

information. But here, Mother sought a deviation under Rule 1910.16-5 so she could afford additional services and tend to the Child's special health concerns. Rule 1910.16-5(b)(1) allows Mother to make such an argument. [7]

Under the logic of Judge Bertin's determination, if the obligee could not afford to make an expenditure to address those unusual needs, then those unusual needs simply did not exist. Judge Clifford's decision to award a deviation under Rule 1910.16-5(b) explains why such logic cannot stand:

> The final issue pertains to the failure of the [hearing officer's proposed order] to include any additional, or special needs, expenses for the child to justify an upward deviation.
>
> Rule 1910.16-5(b) provides that a number of factors may be considered by the trier of fact in deciding on a deviation from the base amount of support as determined by the guidelines.
>
> In this matter, a number of the enumerated factors would apply including, but not limited to, the following: unusual needs, relative assets of the parties, standard of living of the parties, and the best interests of the child.

_____

[7] We also note our decision in **M.L.M. v. C.L.M.**, 241 A.3d 430 (Table), 2020 WL 6106651 (Pa. Super. 2020) (non-precedential decision). We may cite non-precedential decisions after May 1, 2019, for their persuasive value. **M.L.M.** involved a deviation under a high-income analysis, as opposed to a deviation due to a child's disability. Though, both analyses implicate the enumerated factors under Pa.R.C.P. 1910.16-5(b).

In **M.L.M.**, the obligee-parent presented a list of goods and services she would have provided to the child if increased child support had been available. The trial court ruled that the list was excessive and shocking to the conscience. We affirmed. In doing so, we clarified that the court was right to discount the list of expenses because they were simply unreasonable; that this list pertained to future, aspirational expenses did not automatically disqualify Mother from making the request. **See M.L.M.**, at *4; at *3 n.5.

The parties agree that the child has been diagnosed with several mental impairments, requiring extra care and attention that are ongoing past the usual age of emancipation.

In fact, Mother's earning capacity is set at "zero" (and notably not disputed by Father) having had no employment since 2010 due to the level of "hands on" care required for the child.

The record reflected that Mother's financial situation is dire; being on public assistance, accepting food stamps and residing in a one bedroom apartment with the child.

Upon review of the record, Mother did request that the [hearing officer's proposed order] enable her to provide some additional, and specific, items for the child which she could not afford to pay for and some what she was paying for.

It also appears that Mother had several witnesses that were prepared to testify as to some of the child's additional needs and expenses at the time proceedings but were not called upon due to the press of hearing time.

These times were denied by the [hearing officer in her proposed order] because Mother "failed to produce documentary evidence of her out-of-pocket expense for the child's special needs."

This requirement […] may be appropriate in a case where Mother has income and the needs were being already paid for, however, in this case, Mother's income is zero.

As such, Mother clearly cannot afford to pay for these additional expenses out of the base child support amount, nor should she have to, and therefore it was [an] error to not provide adequate latitude to her in this regard.

Notably, the prior [child support] order from July 30, 2013 had already contained an upward deviation of $330 per month for special needs items so that there was always a clear expectation by both parents that this type of deviation would be necessary in this case going forward as well.

Order of Court, 8/20/20 at 6-8, ¶¶35-46 (footnotes and citations to the record omitted).

In sum, we do not find that Judge Bertin's February 25, 2019 order definitively prevented Mother from obtaining an upward deviation for the Child's unusual needs. In its April 2019 order, the court left the door open. As such, we do not find that Judge Clifford's August 2020 order granting the deviation implicated the rule of coordinate jurisdiction. But to the extent that the rule of coordinate jurisdiction was implicated, we would discern no error. If Judge Bertin's 2019 order constituted a final determination of the unusual needs deviation, such a decision would have been "clearly erroneous" and would have created a manifest injustice if followed. For these reasons, Father's first appellate issue is without merit.[8]

### ii. Mother's claims regarding the unusual needs deviation.

We turn now to Mother's cross-appeal regarding unusual needs deviation. *See* Mother's Brief at 9. Mother has consolidated her first and

---

[8] A final note, we observe that the trial court advanced an alternative theory as to why its order should be affirm. The court reasoned that Father actually waived this issue. According to the trial court, Father had agreed to a $300 deviation in lieu of Mother providing proof of her out of pocket expenses for the Child's unusual needs. *See* T.C.O. at 32. In a footnote contained in his Concise Statement, Father explained that while he agreed to the $300 figure, his position has always been that Judge Bertin's February 2019 order foreclosed Mother's ability to seek the deviation. *See* Father's Concise Statement of Matters Complained of On Appeal, ¶ 6, n.1. As there is no record of the exceptions argument, we cannot review what Father actually agreed to. Thus, we consider Father's challenged as preserved.

second cross-appellate issues to present one argument. In essence, Mother argues that that the deviation would have been greater had she been afforded the opportunity to introduce relevant evidence. *See id*. As discussed above, Mother did not present evidence of those expenses she actually incurred regarding the Child's special needs. What Mother sought was a deviation so she could afford additional services for the Child. Mother claims that she attempted to introduce the costs of those services, but was rebuffed by the hearing officer. In her Brief, Mother claims she was prevented from calling one of the Child's therapists, who could have provided context for her expensive requests. Mother also claims that one of the hearings was unfairly cut short, because Father's attorney was late. *See id.*

As we concluded *supra*, under Rule 1910.16-5(b), Mother should have been able to present an argument for aspirational expenses she would incur on behalf of the Child. Although Judge Bertin seemed to be under the impression that a claim for aspirational expenses was improper, Judge Clifford subsequently afforded Mother a second opportunity to make her case. But according to the trial court, Mother largely failed to do so. *See* T.C.O. at 42; Order of Court, 8/20/20 at 6-8 (*supra*). Although Mother supplied the court with some aspirational expenses, Mother also provided documents on statistics and other information that the court found irrelevant. *See id.* at 41. Still, the trial court afforded Mother "some latitude," and ultimately factored into its deviation award those aspirational expenses that were reasonable and appropriate. *Id.* at 41-42.

After review, we conclude that Mother's first and second cross-appellate issues lack merit for several reasons. First, Mother cites no relevant legal authority to support her claims. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) ("It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal."); *see also* Pa.R.A.P. 2119(a)-(b). Second, upon our review of the transcripts, it appears Mother did not object to the hearing officer's courtroom procedure. *See* Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Third, even if we overlook these defects, Mother cannot articulate how the evidentiary ruling constituted an abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014) ("The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be revered only upon a showing that the trial court abused its discretion.").

We are not persuaded that Mother's proffered testimony and evidence would have made a difference. Ultimately, the trial court considered Mother's aspirational expenses, the Child's unusual needs, and determined that Mother should receive a deviation similar to the 2013 deviation. This Court employs an abuse of discretion standard. We will not disturb a child support order unless it is manifestly unreasonable, or if the court failed to consider properly the requirements of the rules governing support actions. *Hanrahan*, 186 A.3d at 966. Here, we discern no abuse of discretion.

## B. Father's claim regarding the custody deviation.

Our review of this claim again necessitates a brief review of the procedural history. Because the litigation spanned multiple years, so too did the child support award. All told, the final child support order governs four and a half years, from January 2017 through July 2021. Father's income changed only marginally throughout this time, and thus so did the support obligation. As for the imposition of an upward deviation under Rule 1910.16-4, the court initially imposed a $300 upward deviation – this figure is not to be confused with the trial court's final imposition of a $300 deviation under 1910.16-5, discussed **supra.** But by the time the trial court issued its final order, the court ordered a standard upward deviation of 30% of Father's basic child support amount.

Father's second appellate issue challenges this deviation. **See** Father's Brief at 44. His argument is two-fold. First, he argues Mother missed her opportunity to prove that a custody deviation was warranted, when, in 2018, she failed to provide the hearing officer with testimony as to what this deviation should be. **See id.** at 44, 58. Second, Father argues even if a custody deviation was warranted, the amount of the deviation – 30% of his basic child support obligation – was erroneous. **See** Father's Brief at 49. We address each argument in turn.

Recall that in 2018, the trial court directed the hearing officer to take evidence and testimony on whether deviation was warranted for Father's lack of custody time with the Child under Rule 1910.16-4. The hearing officer

reported that Mother presented no evidence as to what a reasonable deviation should be. Nevertheless, the hearing officer recommended a deviation for Father's lack of custody. On exceptions, the trial court agreed with the hearing officer. *See* Order of Court, 2/25/19. Father claims this was an error, citing Mother's failure to meet her burden of proof.

The trial court disagreed. It concluded that Mother had no obligation to substantiate her expenses to justify an upward deviation due to Father's lack of custody time. To resolve this issue, we must determine what Mother had to prove in order to warrant an upward deviation.

The 2010 Comment to Rule 1910.16-4 provides:

> The basic child support schedule incorporates an assumption that the child spends 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Variable expenses, such as food and entertainment, that fluctuate based on parenting time were adjusted in the schedule to built in the assumption of 30% parenting time. **Upward deviation should be considered in cases in which the obligor has little to no contact with the child.**

Pa.R.C.P. 1910.16-4 (Explanatory Comment – 2010) (emphasis added).

However, deviation does not turn on the simple question of whether the obligor had contact with the child. The Rules account for some nuance:

> **[A]n upward deviation may not be appropriate if an obligor has infrequent overnight contact with the child, but provides meals and entertainment during daytime contact.** Fluctuating expenditures should be considered rather than the extent of overnight time. A downward deviation may be appropriate when the obligor incurs substantial fluctuating expenditures during parenting time but had infrequent overnights with the children.

*Id.* (Emphasis added).

In this case, Father conceded – and the hearing officer consistently determined – that he does not exercise any custody. And Father admitted he does not know what expenditures Mother makes on behalf of the Child, but that he made none. The court noted that Mother has full custody and incurs all the Child's expenses, which are unique given the Child's special needs. Mother also has no monthly income, nor an earning capacity. For support purposes, Father's monthly net income constitutes all over the parties' combined income. *See* T.C.O. at 20-21. The trial court ultimately found:

> Accordingly, despite neither party being able to present testimony on what would be a "reasonable" deviation for Father's lack of custodial time, it was clear from the record that a full 30% deviation was warranted[.]

*Id.* at 21.

We agree with the trial court's determination that the above facts constituted competent evidence of record warranting a deviation under Rule 1910.16-4. Father had no custody of the Child, nor did he make any expenditures on the Child's behalf. Therefore, Mother was entitled to compensation for those expenditures that the support guidelines assumed Father would make during his custodial time. Father's claim that the deviation lacked evidentiary support is without merit.

The question now becomes how much of an upward deviation was lawful. Father argues that the Explanatory Comment does not mean that a court must reflexively impose "a full 30%" upward deviation from the basic

guideline obligation when a parent fails to exercise physical custody 30% of the time.

The thrust of Father's argument is that an upward deviation under Rule 1910.16-4 is meant to compensate the obligee-parent only for certain variable expenditures, which fluctuate depending upon the parents' custody arrangement. For instance, if a child was with the obligor-parent for part of the week, the obligee's grocery bill would go down since she would not have to feed the child. But if the obligor-parent does not exercise custody, or otherwise contribute toward these expenses, then the obligee-parent's bill goes up.

Father argues that, by contrast, Rule 1910.16-4 was not designed to compensate for those other child-rearing expenditures that both parents must incur regardless of how much custody time they exercise (i.e., both parents would have to furnish a room for the child regardless of whether the obligor-parent exercised custody 4 days per week or 4 days per month).

In short, he claims an upward deviation under Rule 1910.16-4 must be commensurate with those variable expenditures, not with the total child-rearing expenditures. According to Father, those variable expenditures, for which Mother would be entitled to a deviation, amount to a fraction of the total child-rearing costs. That fraction is closer to 4.6% of the basic child support obligation, not 30%. ***See*** Father's Brief at 55 (citing Venohr, Jane ***2012 Review of the Pennsylvania Child Support Guideline***, Report to the

Pennsylvania Department of Public Welfare Department of Child Support

Enforcement (March 30, 2012), p.62).[9]

For further support, Father cites the 2021 Explanatory Comment to

Pa.R.C.P. 1910.16-3, which states:

> Previously, the Basic Child Support Schedule incorporated ***a 30% child custody presumption, which created approximately a 5% decrease in the basic support obligation*** across all combined monthly net incomes regardless of the actual custody schedule.  The new Basic Child Support Schedule reflects the actual expenses of an intact family living in a single household at the various combined monthly net incomes and the number of children with no shared custody adjustment.

Pa.R.C.P. 1910.16-3 (Explanatory Comment – 2021) (emphasis added).

Father reasons that the opposite must then be true; if a presumption of

30% custody means a 5% reduction of the basic support obligation, then no

custody means a 5% increase in the basic support obligation.   Father

concludes that the court erred when it imposed a 30% upward deviation.

We   understand   Father's   arguments,   and   we   agree   that   2010

Explanatory Comment to Rule 1910.16-4 does not mean that an obligee-

parent is entitled to an automatic 30% upward deviation when the obligor-

parent fails to exercise custody and to make expenditures.  Father is correct

that the guidelines do not provide a precise formula for deviating when the

obligor has no custody time, nor makes expenditures on the child's behalf.

---

[9] Jane Venohr is an economist who assisted the Domestic Relations Procedural Rules Committee. ***See*** Pa.R.C.P. 1910.16-1 (Explanatory Comment – 2010); (Explanatory Comment – 2013).

For that very reason, we resort to our abuse of discretion standard. Our role is to determine whether the trial court's support award was manifestly unreasonable and whether the court failed to consider properly the requirements of the rules governing support actions. *Hanrahan*, 186 A.3d at 966.

In our review, we observe that from 2017 through 2021, Father's average net monthly income was approximately $10,800 per month.[10] Father's total child support obligation (including both deviations) comprises approximately 20.89% of his monthly net income.[11]  Meanwhile, Mother and the Child live in a one-bedroom apartment.  She has had to utilize food pantries and public assistance.  We conclude that the 30% deviation was not manifestly unreasonable, given the Child's needs associated with his medical condition, Father's lack of custody, Father's lack of expenditures, Father's income, Mother's role as a fulltime caregiver and her lack of an earning capacity.  Under a different set of facts, such a high percentage deviation might be manifestly unreasonable, even if the obligor-parent exercised no

---

[10] In 2017, Father's monthly net income was $10,089.92. In 2018, it was $9,736.18.  In 2019, it was $10,214.75.  It 2020, it was 10,378.93.  For the first six month in 2021, his monthly net income rose to $16,735.20.  From July 2021 onward, his monthly net income was 10,830.31.

[11] In 2017, the percentage was 21.62%. In 2018, it was 22.19%.  In 2019, it was 20.57%.  In 2020, it was 21.22%.  In 2021, it was 18.82%.  If the trend continues, Father's percentage in 2022 is anticipated to be 20.67%.

custody of the child, nor made any contributions. But in this case, we discern no abuse of discretion.

### C. Mother's claim regarding the denial of her discovery request.

In her third cross-appellate issue, Mother argues the trial court erred when it did not grant her exception relating to her request for discovery. *See* Mother's Brief at 7. Early in the litigation, Mother motioned for leave for discovery shortly after the matter was deemed "protracted." Under our support Rules, a party may move the court for a separate listing, when: there are complex questions of law, fact, or both; or the hearing will be protracted; or the orderly administration of justice requires that the hearing be listed separated. *See* Pa.R.C.P. 1910.11(j)(1)(i)-(iii). If the motion for separate listing is granted, discovery shall be available in accordance with Pa.R.C.P. 4001 *et seq. See* Rule 1910.11(j)(2).

According to Mother, the court never ruled on her discovery motion. She reasons that the court's failure to rule means the court effectively denied her request. Mother sought discovery of Father's financial information, including his "full and complete copies" of his tax returns. *See* Mother's Brief at 8-9.[12]

_____

[12] We note again the dearth of relevant legal authority in Mother's Brief, in apparent circumvention of Pa.R.A.P. 2119. *See C.H.L.*, 214 A.3d at 1276 (*supra*).

The trial court did not address Mother's claim in its trial court opinion. However, upon review of the September 22, 2021 order (from which the parties appeal), the trial court found that Mother waived this issue. The court explained that, in March 2, 2021, Mother had filed a cross-exception regarding the hearing officer's failure to rule on the August 17, 2017 Moton for Discovery. Order of Court, 9/22/21, at 2, ¶8. The trial court heard argument on the discovery issue on June 25, 2021. *Id.* at 3, ¶9. The court then remanded the case for the hearing officer to clarify her calculation of Father's income. *Id.* at ¶11. This resulted in a new order, which prompted new exceptions. But at that time, Mother did not raise the issue of discovery again. *Id.* at 4, ¶¶ 14-15.

Even if Mother preserved the issue, we discern no error or abuse of discretion. The case may have been deemed protracted under Rule 1910.11, but discovery was not necessarily warranted. Mother seemingly concedes that she could not obtain discovery without leave of court. *See* Pa.R.C.P. 1930.5(b) ("Discovery shall be available without leave of court…in…complex support proceedings."); *cf.* Pa.R.C.P. 1930.5(a) ("There shall be no discovery in a simple support…proceeding[] unless authorized by order of court."). Here, Father was a W-2 wage earner. Father provided this information in accordance with Rule 1910.11(c). Insofar as Father was not forthright with his financial disclosure, we observe that the true nature of Father's income was litigated *ad nauseam.* Thus, even if Mother preserved this issue, we discern no error or abuse of discretion.

**D. Mother's claim regarding unreimbursed medical expenses.**

Mother's final cross-appellate issue appears to be a housekeeping measure. According to Mother, the final support order included an administrative error. *See* Mother's Brief at 7. The trial court inadvertently omitted language requiring Father to pay for the Child's unreimbursed medical expenses, pursuant to Pa.R.C.P. 1910.16.6(c). In its Pa.R.A.P. 1925(a) opinion, the trial court noted:

> Upon review of each of the [hearing] officer's recommendations and orders following each remand, it appears that the officer was, in fact, consistent in providing that the unreimbursed medical [expenses] be covered 100% by Father. However, the undersigned acknowledges that it was merely an administrative oversight to not have the same consistency and to have included the same additional provision indicating that the unreimbursed medical expenses included psychiatric, psychological, and therapy/counseling in this case.
>
> […]
>
> Accordingly, upon completion of this appeal, with the approval of the Court, the undersigned shall direct the Domestic Relations Office to administratively amended the July 19, 2021 Order such that the unreimbursed medical expenses include psychiatric, psychological, and therapy / counseling services (to be consistent with all prior ordered entered in this matter).

T.C.O. at 39-40.

Therefore, we grant the request of the trial court and remand this matter only insofar as the trial court may make this correction.

**E. Conclusion**

In sum, we conclude: the trial court did not err or abuse its discretion when it imposed upward deviations relating to the Child's unusual needs (Rule 1910.16-5) or relating to Father's lack of custody (Rule 1910.16-4). Mother waived her challenge to the hearing officer's purported denial of her proffered evidence of the Child's unusual needs. Mother waived her challenge to the hearing officer's purported denial of Mother's request for discovery. Insofar as Mother preserved these challenges, we discern no error or abuse of discretion. Regarding Mother's claim that the court inadvertently omitted the requirement that Father pay the Child's unreimbursed medical expenses, we grant the request of the trial court to amend its order. In all other respects, the order is affirmed.

Order affirmed. Case remanded so the trial court may amend its order as requested. Jurisdiction relinquished.

Judge King joins the Memorandum.

Judge Sullivan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2023